1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com (Lead Counsel)
3   ASHLEY PEARSON (S.B. #281223)
      apearson@omm.com
4   O'MELVENY & MYERS LLP
5   1999 Avenue of the Stars, 7th Floor
    Los Angeles, CA  90067-6035
6   Telephone:  (310) 553-6700
    Facsimile:   (310) 246-6779
7

8   Attorneys for Defendants
    Warner Bros. Studio Enterprises Inc.,
9   The Malpaso Company, Inc., Warner Bros.
    Distributing Inc., Warner Bros. Home
10  Entertainment Inc., Warner Communications
    Inc., TW UK Holdings Inc., Robert Lorenz,
11  Michele Weisler, and Randy Brown

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| GOLD GLOVE PRODUCTIONS, LLC, a California Limited Liability Company and RYAN A. BROOKS, an individual, | Case No.  CV13-07247-DSF (RZx) |
| | **WARNER DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | FILED HEREWITH:  DECLS. OF RANDY BROWN, NEIL LANDAU, BILL SHEINBERG, GERARD BOCACCIO, MARCY MORRIS, SCOTT COOPER, AND ASHLEY PEARSON; NOTICE OF LODGING OF *TROUBLE WITH THE CURVE* DVD; DVD OF MOTION PICTURE *TROUBLE WITH THE CURVE*; [PROPOSED] STATEMENT OF UNCONTROVERTED FACT AND CONCLUSIONS OF LAW; [PROPOSED] JUDGMENT; AND NOTICE OF INTERESTED PARTIES |
| DON HANDFIELD, an individual, TRESSA DIFIGLIA HANDFIELD, an individual, RANDY BROWN, an individual, MICHELE WEISLER, an individual, CHARLES FERRARO, an individual, JAY COHEN, an individual, ROBERT LORENZ, an individual, UNITED TALENT AGENCY, INC., a California corporation, THE GERSH AGENCY, a California corporation, WARNER BROS. PICTURES INC., a Delaware corporation, MALPASO PRODUCTIONS, LTD., a California corporation, WARNER BROS. DISTRIBUTING INC., a Delaware corporation, WARNER BROS. HOME ENTERTAINMENT INC., a Delaware corporation, WARNER BROS. DOMESTIC TELEVISION | |
| | The Hon. Dale S. Fischer |
| | **Hearing Date:**  February 24, 2014 |
| | **Hearing Time:**  1:30 p.m. |
| | **Courtroom:**  840 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISTRIBUTION, INC., a Delaware
corporation, TW UK HOLDINGS,
INC., a Delaware corporation, and
DOES 1-10, inclusive

         Defendants.

1  TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

2       PLEASE TAKE NOTICE that on February 24, 2014, at 1:30 p.m., or as soon

3  thereafter as counsel may be heard by the above-entitled court, located in

4  Courtroom 840 at 312 North Spring Street, Los Angeles, California 90012,

5  defendants Warner Bros. Studio Enterprises Inc., Warner Bros. Distributing Inc.,

6  Warner Bros. Home Entertainment Inc., Warner Communications Inc., TW UK

7  Holdings Inc., The Malpaso Company, Inc., Randy Brown, Michele Weisler, and

8  Robert Lorenz (collectively, the "Warner Defendants") will and hereby do move for

9  summary judgment in the above-captioned case.[1]  The Warner Defendants

10  understand that the other defendants in this case will file parallel motions, seeking

11  the same and additional relief.  The plaintiffs in this case are Ryan Brooks and his

12  production company Gold Glove Productions, LLC (collectively, "Plaintiffs").

13       This motion is made following the conference of counsel pursuant to Central

14  District Local Rule 7-3 and the Court's Standing Order, Docket No. 6 at 7.  *See*

15  Decl. of Ashley Pearson ("Pearson Decl.") ¶ 6; Exs. G-J.

16       This summary judgment motion is made under Rule 56(b) of the Federal

17  Rules of Civil Procedure.  *See* C. Wright, *et al.*, 10A FEDERAL PRACTICE &

18  PROCEDURE ("WRIGHT & MILLER") § 2718, at 301 (3d ed. 1998) ("A defending

19  party is not required by the rule to file an answer before moving for summary

20  judgment.").  It is based on the following grounds:

21       1. Every one of Plaintiffs' 12 claims for relief in this case—8 of which

22       they assert against the Warner Defendants—hinges on the contention that

23       defendants copied the 2012 motion picture *Trouble with the Curve* ("*TWTC*")

24

25       [1] Plaintiffs' complaint erroneously names three of the nine Warner Defendants.
It names defendant Warner Bros. Studio Enterprises Inc. as "Warner Bros. Pictures

26  Inc."; Warner Communications Inc. as "Warner Bros. Domestic Television
Distribution, Inc."; and The Malpaso Company, Inc. as "Malpaso Productions,

27  Ltd." *See* Docket Nos. 1; 28; 45 at 2.

28  The parties agreed to extend the hearing date on this motion.

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

from Plaintiffs' 2008 script *Omaha* and/or a short 2007 video that Plaintiffs made to promote *Omaha*. *See* Docket No. 28, Pls.' First Am. Cmplt. (or "FAC") ¶¶ 199, 210, 224, 237, 252, 254, 259, 269, 279, 284, 290, 293.[2]

2.  Plaintiffs' copying claims—made in a 113-page complaint and dressed up with claims of RICO conspiracy and criminal theft, *see*, *e.g.*, FAC ¶¶ 265-70—are legally and factually without basis.

a.  Warner Defendant Randy Brown wrote *TWTC* in the 1990s, starting while in a screenwriting class at UCLA. *See* Decl. of Randy Brown ("Brown Decl.") ¶ 2-6; Decl. of Neil Landau ("Landau Decl.") ¶ 2-6. Mr. Brown sold his completed *TWTC* script to a third-party production company, The Bubble Factory, in late 1997. *See* Brown Decl. ¶ 11-14; Decl. of Bill Sheinberg ("Sheinberg Decl.") ¶ 3, 8 & Exs. D-E, G-H; Decl. of Gerard Bocaccio ("Bocaccio Decl.") ¶ 4; Decl. of Marcy Morris ("Morris Decl.") Exs. A-B.

b.  Numerous copies of Mr. Brown's *TWTC* script—all predating *Omaha* by many years—as well as other contemporaneous evidence of its contents (including letters promoting the script in the 1990s, and a 1997 "Coverage Report" summarizing it) were preserved and are submitted under oath by witnesses with no financial stake in *TWTC* or this case. *See* Sheinberg Decl. Exs. A-C, F, I-P; Bocaccio Decl. ¶ 5; Morris Decl. Ex. C.

c.  These 1990s *TWTC* scripts that Mr. Brown authored show that every material element that Plaintiffs allege that defendants copied preexisted in Mr. Brown's 1990s *TWTC* scripts. *See* Pearson Decl. Appendix 1 & Exs. B at 45-49, G; Landau Decl. ¶ 13; Sheinberg Decl. Exs. A, C, F; Morris Decl. Ex. C; Brown Decl. ¶ 10 & Exs. A-J.

d.  This extensive and overwhelming evidence of prior creation—which refutes any claim of copying under the well-established case law—cannot

---

[2] Plaintiffs do not list the Warner Defendants as defendants in their Fourth, Sixth, Tenth, and Eleventh Claims for Relief. *See also infra* n.3.

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

1   reasonably be disputed and shows that Plaintiffs' claims of copying are

2   without merit and should be dismissed now, with prejudice.  *See, e.g.,*

3   *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002) ("it is

4   impossible to copy something that does not exist").

5       3.  Plaintiffs make fanciful, conclusory, and legally irrelevant claims that

6   the Warner Defendants' evidence of prior creation is a "fraud," but such

7   argument cannot defeat this motion.  *See, e.g.*, *Far Out Prods., Inc. v. Oskar*,

8   247 F.3d 986, 997 (9th Cir. 2001) (a nonmoving party "cannot preclude

9   summary judgment simply by alleging that [a witness] committed fraud [in

10   submitting evidence]; [it] must raise a genuine issue of material fact as to

11   each of the elements" of its claim); *Bauer v. Yellen*, 548 F. Supp. 2d 88, 94

12   (S.D.N.Y. 2008) (granting summary judgment on an infringement claim

13   where defendant submitted evidence that prior to review of plaintiff's script,

14   defendant's script was "conceived, committed to script form, … and shopped

15   to more than one production company"; plaintiffs "conjecture [and]

16   questioning the authenticity of virtually every piece of information provided

17   by defendants" was insufficient to defeat summary judgment).

18   The Warner Defendants' motion for summary judgment should be granted

19   and this case should be brought to a halt before defendants have to incur any further

20   costs in defending it.  The Warner Defendants appreciate that early summary

21   judgment motions are not the norm, but this case calls out for it, especially given

22   the salaciousness of the complaint and Plaintiffs' abject refusal to face the reality—

23   attested to by various third-party witnesses—that Mr. Brown wrote *TWTC* in the

24   1990s.  *See Mann v. Lee*, 2009 WL 5178095, at *2 (N.D. Cal. Dec. 22, 2009)

25   ("defendants were not required to file a responsive pleading before filing a motion

26   for summary judgment"); J. Stempel & S. Gensler, 11 MOORE'S FEDERAL PRACTICE

27   - CIVIL § 56.60 (2013) (Rule 56 amended in 1946 and 2009 so that now, "[n]o party

28   has to wait for a responsive pleading before filing a summary judgment motion").

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

  If the Court is disinclined to dismiss the case now, the Warner Defendants ask to discuss a focused Scheduling Order to try this case on a streamlined basis, including addressing further threshold, legal infirmities that bar Plaintiffs' claims.

  This motion for summary judgment is based on this Notice of Motion and accompanying Memorandum of Points and Authorities; the concurrently filed Declarations of Ashley Pearson, Neil Landau, Bill Sheinberg, Gerard Bocaccio, Marcy Morris, Randy Brown, and Scott Cooper; the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law (cited herein as "SUF"); the concurrently filed Proposed Judgment; the concurrently filed Notice of Lodging and accompanying *Trouble with the Curve* DVD lodged with the Court; and such additional submissions and argument, including any reply briefing, as may be presented at or before the hearing on this motion.

Dated:  December 4, 2013

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Matthew T. Kline
Matthew T. Kline
Lead Counsel for Warner Defendants

- 4 -

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

1

# **TABLE OF CONTENTS**

2    I.      INTRODUCTION ............................................................................. 1

3    II.     FACTUAL BACKGROUND ............................................................. 1

4    III.    THE WARNER DEFENDANTS ARE ENTITLED TO JUDGMENT ....... 6

5            A.    Prior Creation Bars A Claim Of Copying ............................. 6

6            B.    Mr. Brown Created *TWTC* Many Years Before *Omaha* ...................... 7

7            C.    Plaintiffs' Efforts To Stave Off Judgment Are Without Merit ........... 13

8    IV.     CONCLUSION ............................................................................. 16

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

C<small>ASES</small>

3
4
*Armour v. Knowles,*
  512 F.3d 147 (5th Cir. 2007) ............................................................. 8, 9

5
6
*Art Attacks Ink, LLC v. MGA Entm't Inc.,*
  581 F.3d 1138 (9th Cir. 2009) ............................................................ 14

7
8
*Bauer v. Yellen,*
  548 F. Supp. 2d 88 (S.D.N.Y. 2008) .............................................*passim*

9
10
*Bernal v. Paradigm Talent & Literary Agency,*
  788 F. Supp. 2d 1043 (C.D. Cal. 2010)........................................... 7, 9

11
*Berry v. Deutsche Bank Trust Co. Ams.,*
  632 F. Supp. 2d 300 (S.D.N.Y. 2009) ............................................... 13

12
13
*Christian v. Mattel, Inc.,*
  286 F.3d 1118 (9th Cir. 2002) ............................................................. 7

14
15
*Cortez-Pineda v. Holder,*
  610 F.3d 1118 (9th Cir. 2010) ..........................................................7-8

16
17
*Cottrill v. Spears,*
  87 Fed. Appx. 803 (3d Cir. 2004) ...............................................*passim*

18
19
*Eaton v. NBC,*
  972 F. Supp. 1019 (E.D. Va. 1997) ................................................... 15

20
21
*Far Out Prods., Inc. v. Oskar,*
  247 F.3d 986 (9th Cir. 2001) ............................................................. 14

22
23
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) .......................................................................... 15

24
*Fodor v. Time Warner, Inc.,*
  1994 WL 65287 (9th Cir. Mar. 2, 1994) ........................................... 15

25
26
*Fogerty v. MGM Grp. Holdings Corp.,*
  379 F.3d 348 (6th Cir. 2004) ............................................................... 8

27
28
*Gen. Universal Sys. v. Lee,*
  379 F.3d 131 (5th Cir. 2004) ............................................................. 13

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

*Grubb v. KMS Patriots, L.P.*,
    88 F.3d 1 (1st Cir. 1996) ...................................................................... 7

*Jason v. Fonda*,
    526 F. Supp. 774 (C.D. Cal. 1981), *aff'd* 698 F.2d 966 (9th Cir. 1982) ............. 9

*Kenney v. Warner Bros. Entm't, Inc.*,
    2013 WL 6212593 (D. Mass. Dec. 3, 2013) ................................... 7, 15

*King v. Najm*,
    Case No. CV 08-4164, Docket No. 116 (DSF) (C.D. Cal. Mar. 8, 2011) ......... 14

*Latin Am. Music Co. v. Am. Society of Composers*,
    642 F.3d 87 (1st Cir. 2011) ................................................................. 14

*Linder v. Pac. Dataware, Inc.*,
    1997 WL 91713 (D. Or. Jan. 15, 1997) ............................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................... 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*,
    701 F.2d 95 (9th Cir. 1983) ................................................................ 14

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ............................................................ 14

*Scott-Blanton v. Universal City Studios Prods. LLLP*,
    539 F. Supp. 2d 191 (D.D.C. 2008) .................................................... 13

*Selle v. Gibb*,
    567 F. Supp. 1173 (N.D. Ill. 1983) ................................................. 9, 15

*Selmon v. Hasbro Bradley, Inc.*,
    669 F. Supp. 1267 (S.D.N.Y. 1987) ...................................................... 7

*Siddiqui v. AG Commc'ns Sys. Corp.*,
    233 Fed. Appx. 610 (9th Cir. 2007) .................................................... 14

*Stewart v. Wachowski*,
    574 F. Supp. 2d 1074 (C.D. Cal. 2005) ............................................... 15

*Weygand v. CBS*,
    1997 U.S. Dist. LEXIS 10613 (C.D. Cal. May 20, 1997) ........................ 9

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

**STATUTES**

CAL. BUS. & PROF. CODE § 17200 ...............................................................................2

**OTHER AUTHORITIES**

FED. R. CIV. P. 56...................................................................................................... 13

M.B. & D. Nimmer, 4 NIMMER ON COPYRIGHT § 13.01 (2011).......................*passim*

W. Patry, 3 PATRY ON COPYRIGHT § 9:36 (2013)..................................................6, 7

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

## I.   INTRODUCTION

Plaintiffs' claims in this case all pivot on one dispositive issue:  whether Randy Brown wrote the script for the 2012 motion *Trouble with the Curve* ("*TWTC*") prior to 2005, when plaintiffs commissioned a screenplay for the movie *Omaha*, from which they say *TWTC* was copied.  Proof of prior creation of *TWTC* bars all of Plaintiffs' claims in this case, and extensive, indisputable evidence establishes that Mr. Brown wrote multiple drafts of *TWTC* in the 1990s, and that these scripts contain all of the material elements that Plaintiffs assert were copied from *Omaha*.  None of the personal insults or twisted conspiracy theories that Plaintiffs assert can overcome this lynchpin fact.  Nor can their claims that the Warner Defendants "manufactured" the mass of evidence that disproves Plaintiffs' claims.  This is a simple case.  This summary judgment motion should be granted.

## II.   FACTUAL BACKGROUND

*TWTC* is a movie about baseball released in 2012.  A DVD copy of *TWTC* has been lodged with the Court, *see* Notice of Lodging (filed herewith), and it credits Warner Defendant Randy Brown as the screenwriter.  *TWTC* was directed by Warner Defendant Robert Lorenz, produced by Warner Defendant Michele Weisler, among others, and distributed by Warner Defendants Warner Bros. Distributing Inc. and Warner Bros. Home Entertainment Inc.  Clint Eastwood starred in the movie as the aging baseball scout "Gus," and Amy Adams co-starred as Gus's daughter "Mickey."  Justin Timberlake played a scout/former-baseball-prospect/Mickey's-love-interest, "Johnny."  *See, e.g.*, Pearson Decl. Ex. A.

Plaintiffs have also named several non-Warner Defendants as defendants, claiming they conspired with the Warner Defendants to "steal" *Omaha* and copied it to create *TWTC*.  *See*, *e.g.*, FAC ¶ 199; *infra* n.3.  These additional defendants are Don and Tressa Handfield, who Plaintiffs say wrote the *Omaha* script at Plaintiffs' direction; Mr. Hanfield's former agent (Charles Ferraro) and agency (United Talent Agency); and agent Jay Cohen and The Gersh Agency.  *Id.*

Plaintiffs' complaint is *331* paragraphs long, but only one fact matters in this case.  That is that Randy Brown wrote *TWTC* in the mid-1990s, some10 years before Plaintiffs admit they first conceived and commissioned the script for the movie *Omaha*.  *See* SUF 1; FAC ¶¶ 45, 46, 63.  This simple fact of prior creation bars each of Plaintiffs' 12 claims for relief in this case—as each is premised on the allegation that defendants copied *TWTC* from *Omaha*.[3]

_____

[3] *See* FAC ¶¶ 199 (**Claim 1**; copyright infringement; alleging a "willful, and malicious effort by Defendants/Co-Conspirators to steal the core plot and story of Gold Glove Productions' copyrighted, original, protected expression of a father/daughter baseball story that was to be made into a motion picture, camouflage it, and pass it off as the script and later-made motion picture, *Trouble with the Curve*"), 210 (**Claim 2**; contributory copyright infringement; same), 224 (**Claim 3**; vicarious copyright infringement; same), 237 (**Claim 4**; breach of contract; "Defendants/Co-Conspirators Handfield and DiFiglia breached the[ir agreements with Plaintiffs] as part of the conspiracy alleged herein by providing copies of the original screenplay for *Omaha* … to the other Co-Conspirators"), 252 (**Claim 5**; tortious interference; "Defendants/Co-Conspirators executed a plan to infringe upon Plaintiff Gold Glove Productions' unique, copyrighted father-daughter baseball story"); 254 (**Claim 6**; unjust enrichment; "Defendants/Co-Conspirators Handfield and DiFiglia have benefited from the unauthorized use and/or appropriation of Gold Glove Productions' copyrighted screenplay for *Omaha*"); 259 (**Claim 7**; conversion; "[e]ach Defendant, as part of the conspiracy alleged herein, wrongfully converted and disposed of Gold Glove Productions' rights by misappropriating the screenplay *Omaha*"); 269 (**Claim 8**; RICO; "Defendants/Co-Conspirators infringed upon the three copyrighted scripts and the copyrighted concept reel of *Omaha* as part of a highly illegal scheme and scam"); 279 (**Claim 9**; CAL. BUS. & PROF. CODE § 17200; "Defendants'/Co-Conspirators' conduct was fraudulent in that it attempted to deceive reasonable consumers by stealing the potential award-winning story of *Omaha* and passing it off to consumers as their own original work, by camouflaging it as the resulting infringing work, *Trouble with the Curve*"); 284 (**Claim 10**; false promise; "[the Handfields had] been showing the proprietary scripts around to others, and ultimately copied this copyrighted work and tried to camouflage it as the work of another"); 290 (**Claim 11**; breach of the covenant of good faith and fair dealing; "[the Handfields] unfairly interfered with Gold Glove Productions' right to receive the benefits of these contracts by… misappropriating and infringing Gold Glove Productions' copyrights"); 293 (**Claim 12**; accounting; alleging "illegally derived profits" based on the alleged copying conspiracy).

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

Plaintiffs, of course, never approached defendants to discuss these claims of copying before filing this lawsuit.  As soon as the complaint was filed, the Warner Defendants provided Plaintiffs with evidence that, despite their conspiracy theories:

- Mr. Brown wrote his *TWTC* script in the 1990s;
- His script contained all of the elements Plaintiffs claim were stolen;
- Mr. Brown sold his *TWTC* script to a third-party production company, The Bubble Factory, in 1997, and it marketed it widely; and
- Mr. Brown and others maintained physical and electronic copies of the 1990s scripts and other documents and evidence to prove the above.  *See* Pearson Decl. Ex. B.

Without taking a pause to review the evidence, Plaintiffs called this evidence of prior creation a "fraud" and "manufactured."  Pearson Decl. Exs. C-F.

To address these irresponsible claims and put this wasteful lawsuit to an end, the Warner Defendants retained computer forensics expert Scott Cooper to date the electronic copies of the *TWTC* scripts that Mr. Brown had saved on seven floppy disks.  Mr. Cooper identified 10 readable *TWTC* files saved on the disks.  *See* Cooper Decl. ¶ 8 & Ex. 1 at 4.  He forensically dated each file to well before 2005, when Plaintiffs allegedly commissioned *Omaha*.[4]  The Warner Defendants apprised Plaintiffs of these results and invited Plaintiffs to take a pause in this litigation.

---

[4] *See id.* Ex. 1 at 3-4.  Cooper forensically dated the files as follows: (1) a file named "Trouble 2 4.0," last saved on the disk on March 17, 1997; (2)  a file named "Trouble 2nd draft," last saved on the disk on March 22, 1997; (3) a file named "Trouble 7 - Neil notes," last saved on the disk on August 21, 1997; (4) a file named "Dan & Pat draft," last saved on the disk on September 17, 1997; (5) a file named "Dan/Pat/Randy," last saved on the disk on September 18, 1997; (6) a file named "Trouble - Gina draft," last saved on the disk on December 5, 1997; (7) a file named "Bubble Factory 2," last saved on the disk on January 30, 1998; (8) a file named "Bubble Factory 3," last saved on the disk on May 1, 1998; (9) a file named "BubPunch.fdr," created on the floppy disc on December 23, 2001; and (10) a file named "BubPunch.fdr," created on the floppy disc on March 20, 2003.  *Id.*

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

Pearson Decl. Ex. E.  Again, without reviewing the files Mr. Cooper examined, Plaintiffs declared this evidence a "fraud" and charged ahead.  *Id*. Ex. E-F.

To avoid needless cost, the Warner Defendants began work on this motion and gathered testimonial, documentary, and other forensic evidence of *TWTC*'s creation from Mr. Brown and various third parties.  The Warner Defendants provided Plaintiffs this evidence, in the form of sworn declarations weeks before filing this motion.  *Id*. Ex. G.  This mass of evidence—which is limited in scope, and does not include all of the evidence one could gather[5]—includes the following:

- *The declaration of Neil Landau, Mr. Brown's former screenwriting professor at UCLA*.  Prof. Landau attests that Mr. Brown wrote *TWTC* in his class in the mid-1990s.  Landau Decl. ¶ 5.  Prof. Landau reviewed multiple drafts of Mr. Brown's *TWTC* script in class, later workshops, and one-on-one writing consultations.  *Id*.  Prof. Landau attests that the versions of the script he reviewed in the 1990s contained all of the key story elements that Plaintiffs claim were stolen from *Omaha*.  *Id*. ¶¶ 6, 13.  Prof. Landau confirms he has no personal or financial interest in *TWTC*; that he had never seen nor heard of Plaintiffs or *Omaha* until this lawsuit, and that to date, he has still never seen or read *Omaha*.  *Id*. ¶¶ 1, 15.

- *The declaration of Bill Sheinberg, co-founder of The Bubble Factory*.  Mr. Sheinberg testifies that he reviewed *TWTC* in 1997 as a potential production project for his company and helped decide to option the script.  Sheinberg Decl. ¶ 3.  Mr. Sheinberg kept a *TWTC* file, in which he located a copy of Mr. Brown's initial "September 1997" script that he submitted, as

---

[5] For example, at the outset of this case, counsel for the Warner Defendants received an unsolicited phone call from an agent saying that he remembered reading *TWTC* in the early 2000s and considering the script for one of his actor clients.  He refuted Plaintiffs' copying claims and volunteered to testify.  Only in a desire to save costs and spare the Court's time have the Warner Defendants not submitted more evidence like this.  *See* Pearson Decl. Ex. G at 67.

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

well as a detailed Coverage Report of the script dated "September 14, 1997." *Id.* ¶¶ 4-5, 17; Exs. A-B. This script and Coverage Report confirm that Mr. Brown's 1997 *TWTC* script contained all of the story elements that Plaintiffs claim he stole from *Omaha.* Mr. Sheinberg identified two additional copies of the *TWTC* script from 1997 and 1998, which show the same, and he further submits the option agreements and extensions he negotiated with Mr. Brown for *TWTC.* *Id.* ¶¶ 8-10, 17 & Exs. C-H. He also provides several submission letters The Bubble Factory sent to actors and agents, including Dustin Hoffman and Paul Newman in 1997 through 2001 to generate interest in *TWTC.* *Id.* Exs. I-P. The letters describe *TWTC* as the very story that Plaintiffs falsely contend Mr. Brown stole—*i.e.*, a "character piece center[ed] on the relationship between a father and a daughter with the world of minor league baseball scouting as a back-drop." *Id.* Ex. K. Mr. Sheinberg confirms he has no personal or financial interest in *TWTC* and never heard of Plaintiffs or *Omaha* until this lawsuit. *Id.* ¶¶ 1, 16.

- *The declaration of Gerard Bocaccio, a former executive at The Bubble Factory who now teaches at New York University.* Mr. Bocaccio read *TWTC* in 1997 and 1998, provided Mr. Brown notes on the script, and brought the project to The Bubble Factory. Bocaccio Decl. ¶ 4. He sent most of the submission letters that went to third parties to market *TWTC.* *Id.* ¶ 5. Mr. Bocaccio has no personal or financial interest in *TWTC* and never heard of Plaintiffs or *Omaha* until this lawsuit. *Id.* ¶¶ 1, 9.

- *The declaration of Marcy Morris, Mr. Brown's former attorney.* Ms. Morris was involved in The Bubble Factory option deal, and located in her files a copy of Mr. Brown's *TWTC* script dated "2/98," as well as copies of the option agreements. Morris Decl. ¶¶ 3-4 Exs. A-C.

- *The declaration of Randy Brown.* Mr. Brown attests he wrote *TWTC* in Prof. Landau's class in the mid-1990s, and that the script was complete by

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

1997, when he submitted it to The Bubble Factory.  Brown Decl.  ¶¶ 2-6, 10-

12.  He explains the origins of some key characters and elements in *TWTC*

and describes his writing process and efforts to get *TWTC* produced in the

1990s and early 2000s.  *Id.* ¶ 10-12.  Mr. Brown attests he never heard of

Plaintiffs or *Omaha* before this lawsuit, and that he still has not seen or read

*Omaha*.  *Id.* ¶ 1.  He also states that as he wrote *TWTC*, he saved various

drafts of the script on floppy disks, which he located in his desk at home after

this lawsuit was filed.  *Id.* ¶ 7-8 & Exs. A-J.

- *The report of Scott Cooper, a leading computer forensics expert.*  Mr. Cooper

    analyzed Mr. Brown's seven floppy disks, and found 10 readable *TWTC*

    files.  Cooper Decl. ¶ 8 & Ex. 1; *supra* n.4.  He dated each file based on the

    date they were saved onto the disk, or in the case of two files that were

    created on the disk initially, the date they were created.  *Id.* Ex. 1 at 3-4.  His

    "observations and conclusions … are unambiguous":  "Every observation

    supports, and no observation contradicts that the 'Trouble' script was

    materially underway by 3/17/97."  *Id.* at 3.

The evidence is comprehensive and consistent.  Mr. Brown wrote *TWTC*

years before *Omaha* was created.  SUF 1.  This simple fact bars all of Plaintiffs'

legal claims in this case, and Plaintiffs' wild, unsubstantiated claims that the

Warner Defendants' evidence is a "fraud" cannot stave off this motion.

## III.   THE WARNER DEFENDANTS ARE ENTITLED TO JUDGMENT.

### A.   Prior Creation Bars A Claim Of Copying.

In order to prove the copying on which every one of their 12 claims for relief

is based, *see supra* n.3, Plaintiffs must show (1) they own a valid copyright, and (2)

unlawful copying.  *See* M.B. & D. Nimmer, 4 NIMMER ON COPYRIGHT ("NIMMER")

§ 13.01 (2011); W. Patry, 3 PATRY ON COPYRIGHT ("PATRY") § 9:36 (2013).

Plaintiffs cannot meet the burden on the latter ground for one simple reason

(among many others not raised in this motion).  Copying may be established only

- 6 -                         WARNER DEFS.' MOTION FOR
                              SUMMARY JUDGMENT

where plaintiff proves defendant had access, or an "opportunity[]… of viewing Plaintiff's work *prior to the creation* of the infringing work." *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1053 (C.D. Cal. 2010). "[I]t is well established that a prior-created work cannot infringe a later-created one," as "it is impossible to copy something that does not exist." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002). The case law is well-established on this point.[6]

Courts decide this prior creation issue on summary judgment, *see, e.g.*, *Christian*, 286 F.3d at 1128 (affirming summary judgment; infringement claim "frivolous" in light of evidence of prior creation); *Bernal*, 788 F. Supp. 2d at 1053 (summary judgment), and even at the Rule 12 stage, *see, e.g.*, *Kenney v. Warner Bros. Entm't, Inc.*, 2013 WL 6212593, at *2-3 (D. Mass. Dec. 3, 2013).

## B.    Mr. Brown Created *TWTC* Many Years Before *Omaha*.

1. Plaintiffs admit that they conceived of *Omaha* in 2004 and first wrote it (through a work-for-hire agreement with the Handfields) between 2005 and 2008. *E.g.*, FAC ¶¶ 46 ("[w]hile trying to figure out how to tell the story of an irascible baseball coach, manager, player or scout type character facing illness in the last chapters of his life and a daughter estranged from her father, Brooks set up the Gold Glove Productions offices in 2004"); 62 ("In early 2005, Brooks was looking to hire a screenwriter experienced in sports writing to collaborate with him on *Omaha*."); 94 (alleging Handfield produced final draft of *Omaha* in October 2008). "Allegations in a complaint are considered judicial admissions," *Cortez-Pineda v.*

---

[6] *E.g.*, *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 5 (1st Cir. 1996) ("prior creation renders any conclusion of access or inference of copying illogical"); *Cottrill v. Spears*, 87 Fed. Appx. 803, 806 (3d Cir. 2004) (if "the only opportunity to view plaintiffs' work occurs after defendants have completed their own work, then there can be no opportunity to copy the work, and thus no access"); *Selmon v. Hasbro Bradley, Inc.*, 669 F. Supp. 1267, 1271 (S.D.N.Y. 1987) ("if access is gained following a project's completion, access becomes irrelevant"); 4 NIMMER, *supra*, § 13.02 ("when plaintiff's dissemination occurs only after defendant's work has already been created, then access is not established"); 3 PATRY, *supra*, § 9:37.

WARNER DEFS.' MOTION FOR
                                        SUMMARY JUDGMENT

*Holder*, 610 F.3d 1118, 1122 (9th Cir. 2010), and Plaintiffs' admissions about when they first created *Omaha*—years after *TWTC* was created—bar their claims here, *see, e.g., Armour v. Knowles*, 512 F.3d 147, 153-54 (5th Cir. 2007).

      2.  The testimonial, documentary, and forensic evidence that the Warner Defendants submit confirms that Mr. Brown wrote *TWTC* in the 1990s, eliminating any possible basis for Plaintiffs' copying claims.  SUF 1.  While this evidence is by no means the entirety of the existing evidence proving that *TWTC* was not copied, it far surpasses the threshold required for summary judgment, as established by the relevant case law.  To take several examples:

      • In *Cottrill*, the court granted summary judgment in favor of singer Britney Spears and her collaborators because they wrote the allegedly infringing song *before* they could have accessed plaintiffs' song.  Defendants submitted testimony that they had substantially completed their song and that Spears had recorded the accompanying vocal track before plaintiff created her allegedly infringed work.  87 Fed. Appx. at 806-07.  The district court relied on this testimony in finding there could be no infringement as a matter of law, and the Third Circuit affirmed.  2003 WL 21223846, at *2, *7, *aff'd* 87 Fed. Appx. at 807.

      • In *Fogerty v. MGM Grp. Holdings Corp.*, 379 F.3d 348, 353 (6th Cir. 2004), the court granted summary judgment, holding that defendants could not have copied the theme song for the film *The World is Not Enough*.  The court based its decision on testimony and personal calendars from defendants showing that they had worked on the song before plaintiff provided her song to MGM in February 1999.  It also relied on forensic evidence from a "demo" tape indicating that the song was last modified in January—a month before plaintiff wrote her song.  *Id.*

      • In *Bauer v. Yellen*, 548 F. Supp. 2d 88, 94 (S.D.N.Y. 2008), where the works at issue were screenplays, the court granted summary judgment based on defendant's and third parties' affidavits.  They showed that prior to any review of plaintiff's script, defendant's script was "conceived, committed to script form,

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

registered …, and shopped to more than one production company." *Id.*

• In *Weygand v. CBS*, 1997 U.S. Dist. LEXIS 10613, at *13-16 (C.D. Cal. May 20, 1997), the court granted summary judgment in another screenplay case. The court relied on defendant's written and audiotape treatments that he created before gaining access to plaintiff's work, as well as testimony from two third parties to whom defendant had pitched his script. *Id.*

• In *Bernal*, 788 F. Supp. 2d at 1054-55, the court granted judgment based on defendant's submission of evidence that the author wrote several drafts of the allegedly infringing *Desperate Housewives* script, and that agency began shopping author's script, months before plaintiff submitted her script to the agency.

• In *Armour*, 512 F.3d at 154, the Court relied on a time stamp on a recorded DVD track of the song "Baby Boy" to grant summary judgment in favor of singer Beyonce Knowles.  The DVD bore the stamp "February 13, 2003," and plaintiff said she had submitted her song to the third party intermediary who could have provided access to Ms. Knowles in "late February"—after the fact.  *Id.* at 153-54.

3.  The Warner Defendants' evidence well exceeds these showings.

First, Mr. Brown attests he never heard of Plaintiffs or *Omaha* until this case. Brown Decl. ¶ 1.  This in itself defeats a claim of access.  *See Jason v. Fonda*, 526 F. Supp. 774 (C.D. Cal. 1981) (granting summary judgment on infringement claim where "plaintiff ha[d] not controverted the explicit denial" by defendants that "they had never heard of her book" prior to lawsuit), *aff'd* 698 F.2d 966 (9th Cir. 1982); *Selle v. Gibb*, 567 F. Supp. 1173, 1182 (N.D. Ill. 1983) (same; "before composing the accused song, [defendant] had never heard of plaintiff or his music").

Second, declarations from Mr. Brown and four third-party witnesses show that *TWTC* was, in all material respects, completed by 1997.

• Mr. Brown and Prof. Landau both testify that Mr. Brown wrote *TWTC* in Landau's screenwriting class in the mid-1990s.  *Supra* at 4, 5-6.  Indeed, *before this lawsuit was ever filed*, Prof. Landau published an article

- 9 -

documenting how Mr. Brown "wrote the first draft [of *TWTC*] in my class at UCLA."  Landau Decl. ¶ 11 & Ex. C.

- Sheinberg, Bocaccio, and Morris all attest they were involved with The Bubble Factory's option deal for *TWTC* in 1997 and 1998.  The scripts in their files show that *TWTC* was fully developed by that time.  *Supra* at 4-5; Sheinberg Decl. Exs. A, C, F; Morris Decl. Exs. A-C.

- Bocaccio and Sheinberg testify that they not only reviewed Mr. Brown's *TWTC* scripts in the late 1990s and optioned *TWTC*, they marketed the completed script to a wide variety of third parties to generate interest in the project.  Sheinberg Decl. ¶¶ 3, 12-13; Bocaccio Decl. ¶¶ 5-7.

This testimonial and documentary evidence is confirmed by electronic media, *see supra* n.4, the forensic analysis of Mr. Cooper, *see* Cooper Decl., and multiple, dated hard copies of the script Sheinberg's and Morris's files, *see supra* at 4-5.

These 1990s versions of the *TWTC* script contain all of the elements of the *TWTC* movie that Plaintiffs allege were copied from *Omaha*.  Some two months ago, defendants provided Plaintiffs with a chart sourcing these alleged copied elements to Mr. Brown's 2/98 *TWTC* script.  *See* Pearson Decl. Ex. B at 45-49. The percipient witnesses who have submitted declarations and the additional scripts cited in this motion confirm that these allegedly copied elements existed in the 1990s *TWTC* scripts.  *See* Brown Decl. ¶¶ 5, 10; Landau Decl. ¶¶ 13; Sheinberg Decl. Exs. A, C, F, W; Morris Decl. Ex. C.  The Warner Defendants have again charted each claimed copied element from *Omaha* and sourced it to excerpts from a September 1997 version of the *TWTC* script.  *See* Pearson Decl. Appendix 1.  All of this shows that the only substantive differences between the 1990s versions of the *TWTC* script and the final 2012 movie version were minor story lines—*none of which Plaintiffs have ever alleged were copied.  See id*.; Brown Decl. ¶¶ 20-21; Landau Decl. ¶ 10.

Third, still other documents from the 1990s show that the *TWTC* story has always been the same—and that it has *always* centered on the Gus/Mickey father-daughter storyline that Plaintiffs have falsely asserted was copied. *Cf.* FAC ¶ 108 (calling *TWTC* a "counterfeit version of Gold Glove Productions' father-daughter story"). To take just a few examples of such contemporaneous documents:

• Exhibit N to Mr. Sheinberg's declaration is a submission letter that The Bubble Factory sent to Boaty Boatwright at International Creative Management on March 1, 1999. In the letter, The Bubble Factory describes the *TWTC* script it enclosed as exactly the sort of story that Plaintiffs say was stolen, *see id.*:

> Set in the Carolina's amid the world of minor league baseball scouting, the piece is more about a father - daughter relationship than baseball per se. Gus Lobel's faculties are failing and his estranged, Sandra Bullock-daughter comes back as his eyes & ears in order to scout the next great phenom. Rich with baseball as metaphor for life, we think the piece turns on the academy award winning potential in that role.

Neither Mr. Brown—nor any defendant—stole Plaintiffs' father-daughter idea.[7]

• Exhibit B to the Sheinberg Declaration—a September 14, 1997, "Coverage Report" of *TWTC* that he commissioned—proves the same. The Report bears a fax header date (copied below), confirming it was faxed on "Sept. 14, 1997":

> FROM : Everest Pictures          PHONE NO. : 818 999 9790          Sep. 14 1997 07:30PM P1

*Id.* In a multi-page summary and analysis of the script, the Coverage Report details all of the plot points in *TWTC*—plot points, which under Plaintiffs' conspiracy

---

[7] *Accord id.* Ex. K (Feb. 1998 Bubble Factory letter to Punch Productions: "This terrific character piece centers on the relationship between a father and a daughter with the world of minor league baseball scouting as a back-drop."); Ex. M (Oct. 1998 letter to CHAL Productions; same); Ex. P (Jan. 2001 letter to ABC/Disney: "THE TROUBLE WITH THE CURVE by Randy Brown is a very contemporary father/daughter dramedy that plays out in the Carolina's amid the world of minor league baseball scouting. The focus of the movie has to do with the daughter's return into the life of her estranged father who is suddenly losing his eyesight and ad hoc, his ability to stay in baseball; his reason for living.").

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

theory, Mr. Brown *only stole from them some 10 years later*. *Id.* at 125-29.  But all one needs to do to see how frivolous Plaintiffs' copying claims are is to compare their complaint to the opening summary in the Coverage Report, which states:

> **Log Line:**     Mickey Lobel is a 30 year old recent graduate from law school, and has the world at her feet when she lands a job with the most prestigious law firm in town. Overjoyed with her accomplishment, her elation soon changes to shock and sadness when she finds out that her father, Gus, a famous baseball scout for the Braves with a respected career, has just been diagnosed with glaucoma. Knowing that he can no longer do his job, and that his colleagues are talking about his recent difficulties and the possibility of a forced early retirement, she puts her life and career on hold to be his eyes, and to help him bring in the best of the new recruits.  With thirty years of smothered feelings between them after the loss of her mother and his wife, the two develop a new, mutually respectful relationship, and embark on a new phase in their lives with the baseball diamond serving as their backdrop.

*Id.* at 124.[8]

Indeed, this summary of *TWTC* from the 1997 Coverage Report mirrors the summary of the 2012 *TWTC* movie printed on the DVD, *see* Pearson Decl. Ex. A:

> Gus Lobel (Clint Eastwood) has been a top baseball scout for decades but age has caught up with him.  He refuses to be benched for what could be the final innings of his career.  The Atlanta Braves' front office is questioning his judgment, especially with a hot batting phenom on deck for the draft.  Enter Gus's estranged daughter, Mickey (Amy Adams), an ambitious attorney on the partner track who joins him on a scouting trip, jeopardizing her own career to save his.  Justin Timberlake also stars as a rival scout with his sights on a career in the announcer's booth – and his eyes on Mickey – in an entertaining tale "filled with heart, humor and fantastic acting."

---

[8] If there were any question whether the "Johnny" character existed in the 1997 version of *TWTC*, below is an excerpt from the Coverage Report confirming his role in the 1997 script as well, *e.g.*, *id.* at 126:

> At their first destination in Carolina, [Gus and Mickey] settle in to the "Take It Or Leave It" motel where Mickey and Johnny Flanigan, have an unfortunate run-in.  At a later meeting with Gus in attendance, he realizes that he scouted Johnny years ago and that he used to be a player for the Yankees for a short time, and the two enjoy a warm exchange....
> Mickey and Johnny continue to get closer as she confides in him again, this time about her frustration with her father….

- 12 -

On these facts of prior creation, there is no reasonable basis to allow any of Plaintiffs' copying claims to proceed. *See supra* at 6-9 (canvassing case law); *see also Gen. Universal Sys. v. Lee*, 379 F.3d 131, 147-48 (5th Cir. 2004); *Berry v. Deutsche Bank Trust Co. Ams.*, 632 F. Supp. 2d 300, 302, 305 (S.D.N.Y. 2009).

### C. Plaintiffs' Efforts To Stave Off Judgment Are Without Merit.

Plaintiffs have provided the Warner Defendants with no competent evidence contesting this lynchpin date-of-creation issue. Instead, they attack defendants' proffered evidence, calling it (1) a "fraud"; (2) sponsored by "biased" witnesses; and (3) contravened by experts whose alleged reports Plaintiffs refuse to disclose. Pearson Decl. Exs. C, E at 57, F, H at 71, I. None of these responses has merit.

1. Plaintiffs' tactic of "questioning the authenticity of virtually every piece of information provided by defendants" is unsustainable under copyright law, *Bauer*, 548 F. Supp. 2d at 94; *see Cottrill*, 87 Fed. Appx. at 807; as well as Rule 56, *see*, *e.g. Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Pronounce as they might that the *TWTC* scripts from Mr. Sheinberg's and Ms. Morris' files are "forgeries"; that the Coverage Report and *TWTC* submission letters are a "fraud"; and that the computer and other evidence is "fabricated," they have provided no competent evidence to support these grave claims.

Courts regularly reject such attacks on prior-creation evidence. In *Bauer*, 548 F. Supp. 2d at 94, the court rejected plaintiffs' repeated challenges to the authenticity of early versions of defendants' allegedly infringing script, holding that plaintiffs' unyielding questioning of defendants' evidence was "conjecture" and insufficient to defeat summary judgment. *Accord, e.g.*, *Scott-Blanton v. Universal City Studios Prods. LLLP*, 539 F. Supp. 2d 191, 200 (D.D.C. 2008).

The same should hold true here. Plaintiffs' wild claims that defendants must have manufactured the evidence—given that, *e.g.*, Mr. Brown did not register his *TWTC* scripts with the U.S. Copyright Office or Writer's Guild, *see* Pearson Decl. Ex. E at 58, I at 74—not only ignore all of the independent creation evidence above

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

(most of it from third parties), they ignore that Mr. Brown had *no duty* to register his scripts either to protect them, or to prevail in this lawsuit, *see* NIMMER, *supra*, § 7.16 ("as to works created on and after January 1, 1978, the effective date of the current Copyright Act, registration is not a condition to obtaining copyright"); *id.* § 14.10[B][2] (the Copyright Act's "registration requirement is nonsymmetrical" and does not apply to defendants accused of infringement); *Latin Am. Music Co. v. Am. Society of Composers*, 642 F.3d 87, 90 (1st Cir. 2011) (same).[9]

2.   Nor can plaintiffs preclude summary judgment by saying that defendants' witnesses are "biased."  Pearson Decl. Ex. E at 57, H at 71, I at 76.  To begin, besides Mr. Brown, each declarant attested he or she has no interest in *TWTC*, *supra* at 4-5, and *none* except Mr. Brown is a party.  Moreover, where defendants have supported their motion "with affidavits, declarations, and documentary evidence" from independent, percipient witnesses, a plaintiff's "challenges to the weight of the evidence and the credibility and bias of potential witnesses do not create triable issues of fact that would preclude summary judgment."  *Siddiqui v. AG Commc'ns Sys. Corp.*, 233 Fed. Appx. 610, 612-13 (9th Cir. 2007).[10]  Indeed, in the copyright context, courts make clear that "a copyright plaintiff cannot base her

---

[9] Also without basis are Plaintiffs' speculative claims of access in the late 2000s to *Omaha*—which are predicated *not* on Plaintiffs ever sharing *Omaha* with the Warner Defendants, but an unproven conspiracy, based on no actual evidence, of allegedly unscrupulous agents indirectly sharing *Omaha* with the Warner Defendants.  *See, e.g.*, FAC ¶¶ 182-93.  Such conspiratorial theories of access are irrelevant in any event, as the prior creation evidence above shows that Mr. Brown completed *TWTC seven years before* Omaha was conceived.  Moreover, the late-2000s theory of access is unproven, speculative, and unstainable.  *See, e.g.*, *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003); *King v. Najm*, Case No. CV 08-4164, Docket No. 116 (DSF) (C.D. Cal. Mar. 8, 2011).

[10] *Accord, e.g.*, *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983); *Linder v. Pac. Dataware, Inc.*, 1997 WL 91713, at *5 (D. Or. Jan. 15, 1997).

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT

1    opposition to summary judgment entirely on the hope that a fact finder will

2    disbelieve the persons who have submitted affidavits on issues of access." *Eaton v.*

3    *NBC*, 972 F. Supp. 1019, 1024 (E.D. Va. 1997).

4         3.   Plaintiffs finally claim that they have gathered expert reports—which they

5    refuse to disclose—opining that *Omaha* and *TWTC* "are not only substantially

6    similar but strikingly so," meaning Mr. Brown likely copied *Omaha*.  Pearson Decl.

7    Ex. I at 75.  Such so-called expert reports—from non-percipient witnesses, who

8    cannot know whether Mr. Brown wrote *TWTC* in the 1990s, as various eye

9    witnesses attest he did—are legally irrelevant.  The failure to establish access to an

10   infringing work renders argument concerning similarities legally meaningless.

11   Indeed, no amount of similarity "warrant[s] an inference of copying to the extent …

12   plaintiff fails to establish prior creation."  4 NIMMER, *supra*, § 13.02; *see Stewart v.*

13   *Wachowski*, 574 F. Supp. 2d 1074, 1092, 1101 (C.D. Cal. 2005) (as matter of law,

14   evidence of "striking similarity" cannot overcome lack of proof showing access to

15   allegedly infringed work); *Kenney*, 2013 WL 6212593, at *3.

16        In *Stewart*, Judge Morrow held that "the Ninth Circuit follows the majority

17   rule that striking similarity will support an inference of access only when such an

18   inference is reasonable in light of the totality of the evidence in the record."  574 F.

19   Supp. 2d at 1100.  Striking similarity does not "obviate[] the need to prove access,"

20   *id.* at 1098-99, where the defendant's work predates the allegedly infringed work or

21   where claims of access are otherwise implausible, *id.* at 1101.

22        The majority rule that Judge Morrow cited included her reliance on cases like

23   *Fodor v. Time Warner, Inc.*, 1994 WL 65287, at *2 (9th Cir. Mar. 2, 1994).  There,

24   the court granted summary judgment for defendant, holding that "if [defendant] did

25   not have access to the screenplay prior to the writing of [the movie], even striking

26   similarities between the two works must be deemed fortuitous."  1994 WL 65287,

27   at *2 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)).  The

28   same is true of *Selle*.  There, defendants submitted evidence that they never heard

- 15 -

of plaintiff or his music before composing their song.  Thus, "it matter[ed] not, despite the testimony of plaintiff's expert, how strikingly or substantially similar the two musical compositions" were.  567 F. Supp. at 1182.  Given the overwhelming evidence that Mr. Brown had no access to *Omaha* when he wrote *TWTC*, *supra* at 3-6, 9-13, any alleged "similarity" is simply irrelevant.[11]

## IV.   CONCLUSION

There are many reasons to dismiss this case with prejudice, but one screams out now clearly:  Mr. Brown created *TWTC* years before *Omaha*; he did not copy it. Defendants' motion for summary judgment should be granted, and this wasteful and misguided case should be brought to a decisive end.

Dated:  December 4, 2013

Respectfully submitted,

O'MELVENY & MYERS LLP

By:   /s/ Matthew T. Kline
Matthew T. Kline
Lead Counsel for Warner Defendants

OMM_US:71982325

---

[11] Defendants raised this legal defect with Plaintiffs many times, and they never cited a single case addressing why their expert reports were relevant.  *See* Pearson Decl. ¶ 6; Exs. G at 69, J.  Also, as defendants made clear to Plaintiffs, their claims of "similarity" were without basis in any event.  *See* Pearson Decl. Ex. B at 49 (explaining how claimed copied elements were, *inter alia*, scenes-á-faire).

WARNER DEFS.' MOTION FOR
SUMMARY JUDGMENT