**JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP**
Michael J. Saltz, Esq.  SBN 189751
msaltz@jrsfllp.com
Colby A. Petersen, Esq. SBN 274387
cpetersen@jrsfllp.com
G. Austin Sperry, Esq.  SBN 278535
asperry@jrsfllp.com
10866 Wilshire Boulevard, Suite 1550
Los Angeles, CA  90024
Telephone:  (310) 446-9900  Facsimile: (310) 446-9909

Attorneys for Defendants DON HANDFIELD and TRESSA DIFIGLIA HANDFIELD

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLD GLOVE PRODUCTIONS, LLC, a California Limited Liability Company and RYAN A. BROOKS, an individual,<br><br>                    Plaintiffs,<br><br>          v.<br><br>DON HANDFIELD, an individual, TRESSA DIFIGLIA HANDFIELD, an individual, RANDY BROWN, an individual, MICHELE WEISLER, an individual, CHARLES FERRARO, an individual, JAY COHEN, an individual, ROBERT LORENZ, an individual, UNITED TALENT AGENCY, INC., a California corporation, THE GERSH AGENCY, a California corporation, WARNER BROS. PICTURES INC., a Delaware corporation, MALPASO PRODUCTIONS, LTD., a California corporation, WARNER BROS. DISTRIBUTING INC., a Delaware corporation, WARNER BROS. HOME ENTERTAINMENT INC., a Delaware corporation, WARNER BROS. DOMESTIC TELEVISION DISTRIBUTION, INC., a Delaware corporation, TW UK HOLDINGS, INC., a Delaware corporation, and DOES 1-10, inclusive<br><br>                    Defendants. | Case No.: CV13-07247-DSF(RZx)<br><br>**DEFENDANTS DON HANDFIELD'S AND TRESSA DIFIGLIA HANDFIELD'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Filed Concurrently With:<br><br>(1)    Defendants' Statement of Uncontroverted Facts and Conclusions of Law;<br>(2)    Declaration of Michael J. Saltz;<br>(3)    Declaration of Dale de la Torre;<br>(4)    [Proposed] Judgment; and<br>(5)    Notice of Interested Parties<br><br>The Hon. Dale S. Fischer<br><br>**Hearing Date:** February 24, 2014<br>**Hearing Time:** 1:30 p.m.<br>**Courtroom:** 840<br>**Time:** 1:30 p.m. |

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Complaint filed:   October, 1 2013
First Amended
Complaint Filed:   October 18, 2013
Trial Date:        TBA

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 24, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled court, located in Courtroom 840 at 312 North Spring Street, Los Angeles, California 90012, defendants Don Handfield and Tressa DiFiglia Handfield (collectively, the "Handfields") will and hereby do move for summary judgment, or in the alternative summary adjudication, in the above-captioned case. The Handfields understand that the other defendants in this case will file parallel motions, seeking the same and additional relief. The plaintiffs in this case are Ryan Brooks and his production company Gold Glove Productions, LLC (collectively, "Plaintiffs").

This motion is made following the Handfields' counsel's attempted conference of counsel pursuant to Central District Local Rule 7-3 and the Court's Standing Order, Docket No. 6 at 7. [*See* Saltz Decl. ¶ 2; Ex. "1"].

This summary judgment/adjudication motion is made under Rule 56(b) of the Federal Rules of Civil Procedure. [*See* C. Wright, *et al.*, 10A FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 2718, at 301 (3d ed. 1998) ("A defending party is not required by the rule to file an answer before moving for summary judgment.")]. It is based on the following grounds:

1. Every one of Plaintiffs' 12 claims for relief in this case – all of which are asserted against the Handfields – hinges on the contention that defendants copied the 2012 motion picture *Trouble with the Curve* ("*TWTC*") from Plaintiffs' 2008 script *Omaha* and/or a short 2007 video that Plaintiffs made to promote *Omaha*. [*See* Docket No. 28, Pls.' First Am. Cmplt. (or "FAC") ¶¶ 199, 210, 224, 237, 252, 254, 259, 269, 279, 284, 290, 293]. Such claims will be

referred to herein as the "story-theft claims".

2.  Plaintiffs' story-theft claims – made in a 113-page complaint and dressed up with claims of RICO conspiracy and criminal theft [*see*, *e.g.*, FAC ¶¶ 265-70] – are legally and factually without basis.

a.  Warner Defendant Randy Brown wrote *TWTC* in the 1990s, starting while in a screenwriting class at UCLA.  [*See* Decl. of Randy Brown (Dkt. # 54) ("Brown Decl.") ¶ 2-6; Decl. of Neil Landau (Dkt. # 55) ("Landau Decl.") ¶ 2-6].  Mr. Brown sold his completed *TWTC* script to a third-party production company, The Bubble Factory, in late 1997.  [*See* Brown Decl. (Dkt. # 54) ¶ 11-14; Decl. of Bill Sheinberg (Dkt. # 56) ("Sheinberg Decl.") ¶ 3, 8 & Exs. D-E, G-H; Decl. of Gerard Bocaccio (Dkt. # 57) ("Bocaccio Decl.") ¶ 4; Decl. of Marcy Morris (Dkt. # 58) ("Morris Decl.") Exs. A-B.

b.  Numerous copies of Mr. Brown's *TWTC* script – all predating *Omaha* by many years – as well as other contemporaneous evidence of its contents (including letters promoting the script in the 1990s, and a 1997 "Coverage Report" summarizing it) were preserved and are submitted under oath by witnesses with no financial stake in *TWTC* or this case. [*See* Sheinberg Decl. Exs. A-C, F, I-P (Dkt. #s 56-1, 56-2); Bocaccio Decl. (Dkt. # 57) ¶ 5; Morris Decl. Ex. C (Dkt. # 58-1)].

c.  These 1990s *TWTC* scripts that Mr. Brown authored show that every material element that Plaintiffs allege that defendants copied preexisted in Mr. Brown's 1990s *TWTC* scripts. [*See* Pearson Decl. Appendix 1 (Dkt. # 53-2) & Exs. B (Dkt. # 53-3) at 45-49, G; Landau Decl. (Dkt. # 55) ¶ 13; Sheinberg Decl. Exs. A, C, F (Dkt. # 56-1); Morris Decl. Ex. C (Dkt. # 58-1); Brown Decl. (Dkt. # 54) ¶ 10 & Exs. A-J (Dkt. # 54-1).

d.  This extensive and overwhelming evidence of prior creation – which refutes any claim of copying under the well-established case law – cannot reasonably be disputed and shows that Plaintiffs' claims of copying are without

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

merit and should be dismissed now, with prejudice. [*See, e.g., Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002) ("it is impossible to copy something that does not exist")].

3.   Plaintiffs' contract-based claims against the Handfields are based upon allegations that the Handfields breached a 2008 Writer Agreement by submitting a finished script past an August 8, 2008 deadline that was not to Plaintiffs' satisfaction in that it did not contain all of Plaintiffs' notes. The contract-based claims encompass Plaintiffs' Fourth Claim for Relief for Breach of Contract by incorporation [FAC ¶¶ 94-100, 233]; Fifth Claim for Relief for Tortious Interference With Prospective Economic Advantage by express allegation [FAC ¶¶ 244, 245]; Plaintiffs' Tenth Claim for Relief for False Promise by express allegation [FAC ¶ 282]; and Plaintiffs' Eleventh Claim for Relief for Breach of Covenant of Good Faith And Fair Dealing by express allegation [FAC ¶ 290]. The contract-based claims must be dismissed pursuant to summary judgment, or in the alternative summary adjudication, because:

a. Plaintiffs declared a breach of the 2008 Writer Agreement in writing in November 2008 for a breach that occurred in October 2008 [FAC ¶¶ 96, 97], and Plaintiffs did not sue upon such claims until October 2013; and

b. The contract based claims are time barred as a matter of law because the statute of limitations to sue upon such contract-based claims expired in October 2012.

4. Finally, summary judgment, or in the alternative summary adjudication, is proper as to Plaintiffs' Sixth Claim for Relief for Unjust Enrichment because there is no such claim for relief in the State of California. [See *Bosinger v. Belden CDT, Inc.*, 358 Fed.Appx. 812, 815 (9th Cir. Cal. 2009) ("In California there is no cause of action for unjust enrichment; it is a 'general principle, underlying various legal doctrines and remedies, rather than a remedy itself.'")]. The Handfields' motion for summary judgment, or in the alternative summary

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

adjudication, should be granted and this case should be brought to a halt before defendants have to incur any further costs in defending it.

If the Court is disinclined to dismiss the case now, the Handfield Defendants ask to discuss a focused Scheduling Order to try this case on a streamlined basis, including addressing further threshold, legal infirmities that bar Plaintiffs' claims.

This motion for summary judgment is based on this Notice of Motion and accompanying Memorandum of Points and Authorities; the accompanying filed declarations of Michael J. Saltz and Dale de la Torre; the Motion for Summary Judgment filed by the Warner Defendants (Dkt. # 53) and its accompanying filed Declarations (with exhibits) of Ashley Pearson (Dkt. # 53-1), Neil Landau (Dkt. # 55), Bill Sheinberg (Dkt. # 56), Gerard Bocaccio (Dkt. # 57), Marcy Morris (Dkt. # 58), Randy Brown (Dkt. # 54), and Scott Cooper (Dkt. # 59); the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law (cited herein as "SUF"); the concurrently filed Proposed Judgment; the Warner Defendants' filed Notice of Lodging and accompanying *Trouble with the Curve* DVD lodged with the Court (Dkt. # 60); and such additional submissions and argument, including any reply briefing, as may be presented at or before the hearing on this motion.

Dated: December 6, 2013

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**

_____/S/_____
Michael J. Saltz, Esq.,
Attorneys for Defendants Don Handfield and
Tressa DiFiglia handfield

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# **TABLE OF CONTENTS**

1.   INTRODUCTION ...................................................................................1

2.   FACTUAL BACKGROUND ..................................................................2

    A.   THE ALLEGED STORY-THEFT CLAIMS. ........................................2

    B.   THE REMAINING BREACH-OF-CONTRACT-BASED
        CLAIMS. ........................................................................................8

3.   STANDARD OF REVIEW.....................................................................10

4.   ARGUMENT...........................................................................................10

    A.   THE HANDFIELD DEFENDANTS ARE ENTITLED TO
        JUDGMENT ON THE STORY-THEFT CLAIMS AS TO EACH
        OF THE TWELVE CAUSES OF ACTION...........................................10

    B.   ALL OF PLAINTIFFS' REMAINING CONTRACT-BASED
        CLAIMS AGAINST THE HANDFIELDS ARE BARRED BY
        THE STATUTE OF LIMITATIONS AS A MATTER OF LAW,
        AND THEREFORE MUST BE DISMISSED. ......................................11

    C.   SUMMARY ADJUDICATION AS TO PLAINTIFFS' UNJUST
        ENRICHMENT CLAIM IS PROPER, AS THERE IS NO SUCH
        CAUSE OF ACTION IN CALIFORNIA. ...........................................15

5.   CONCLUSION .......................................................................................15

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Barton v. New United Motor Manufacturing, Inc.* 43 Cal.App.4th 1200 (1996)......13

*Bosinger v. Belden CDT, Inc.,* 358 Fed. Appx. 812, 815 (9th Cir. Cal. 2009) ....iv, 15

*Carter v. Prime Healthcare Paradise Valley LLC,* 198 Cal.App.4th 396 (2011).....13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..........................................................10

*Chas. L. Harney, Inc. v. State of California* 217 Cal.App.2d 77 (1963)...................13

*Davies v. Krasna* 14 Cal.3d 502 (1973) ....................................................................13

*Devereuax v. Abbey*, 263 F.3d 1070 (9th Cir. 2001)..................................................10

*Downs v. Department of Water & Power,* 58 Cal.App.4th 1093 (1997) ..................12

*Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350 (2010) ......................................15

*Guaranty Trust Co. v. York,* 326 U.S. 99 (1945)........................................................12

*Gutierrez v. Mofid,* 39 Cal.3d 892 (1985) .................................................................12

*Hendrix v. Novartis Pharm. Corp*., 2013 U.S. Dist. LEXIS 143936, CCH Prod. Liab. Rep. P19248 (C.D. Cal. Oct. 2, 2013)............................................................12

*In re Mortgage Elec. Registration Sys. (MERS) Litig.,* 2011 U.S. Dist. LEXIS 7232 (D. Ariz. Jan. 25, 2011) ......................................................................................15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 2010 U.S. Dist. LEXIS 131330 (C.D. Cal. Nov. 30, 2010)........15

*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison,* 18 Cal.4th 739 (1998)12

*Keru Investments, Inc. v. Cube Co*., 63 Cal.App.4th 1412 (1998)...........................13

*Leeper v. Beltrami,* 53 Cal.2d 195 (1959) .................................................................13

*Melchior v. New Line Prods. Inc.,* 106 Cal.App.4th 779 (2003)...............................15

*Naftzger v. American Numismatic Society,* 42 Cal.App.4th 421 (1996) ...................13

*Norgart v. Upjohn Co.,* 21 Cal.4th 383 (1999)..........................................................13

*People ex rel Dept. of Conservation v. Triplett,* 48 Cal.App.4th 233 (1996) ...........13

*Record Machine & Tool Co. v. Pageman Holding Corp*., 172 Cal.App.2d 164 (1959) ...........................................................................................................................12

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

*Romano v. Rockwell Internat., Inc.,* 14 Cal.4th 479 (1996) .......................................12

*San Francisco Unified School Dist. v. W. R. Grace & Co.,* 37 Cal.App.4th 1318 (1995) .................................................................................................13

<u>Statutes</u>

*Code Civ. Proc.* § 337 .................................................................................14

<u>Rules</u>

Fed. R. Civ. P., R. 56(a) .................................................................................10

Fed. R. Civ. P., R. 56(c) .................................................................................10

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **1. INTRODUCTION**

Defendants Don Handfield ("Don"), and his wife Tressa DiFiglia Handfield ("Tressa") (Tressa and Don are collectively referred to herein as the "Handfields"), are being sued amongst other defendants in this case by Plaintiff Gold Glove Productions, LLC ("GGP") and Plaintiff Ryan Brooks ("Brooks") (GGP and Brooks are collectively referred to herein as "Plaintiffs") solely because of a crippling arrogance that makes Plaintiffs believe that "no one in Hollywood could possibly have an original screenplay about baseball without stealing from Plaintiffs" in the face of overwhelming evidence to the contrary.

As such, Plaintiffs have filed a First Amended Complaint ("FAC"), which is a shorter 119 page version of the even longer Original Complaint, that weaves together a fantastic and impossible story of betrayal and intrigue that is wholly based upon speculation, conjecture and fantasy without a shred of actual evidence. Once one makes it past approximately a hundred paragraphs of self adulation, this case comes down to two allegations against the Handfields: 1) The Handfields secretly gave the *Omaha* script and story that they wrote for Plaintiffs to Defendant Randy Brown and the Warner defendants to make the movie *Trouble With The Curve* ("*TWTC*"); and 2) The Handfields breached their 2008 Writer Agreement with Plaintiffs in 2008 by submitting their finished product late and not to Brooks' satisfaction. No other allegations of wrongdoing are alleged against the Handfields.

First, as to the breach of the 2008 Writer Agreement, summary judgment/adjudication is appropriate because it is beyond dispute that the alleged breaches of said Agreement occurred in 2008 and are thus barred by the statute of limitations as a matter of law.

Second, as to the issue of story-theft, the Warner defendants have filed a Motion for Summary Judgment in which the Handfields expressly join, incorporate herein, and borrow liberally from (with permission and with a few additions) that establish through

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

actual indisputable evidence that the Handfields had nothing to do with the prior development of *TWTC*.

Specifically, Plaintiffs' story-theft claims in this case all pivot on one dispositive issue: whether defendant Randy Brown wrote the script for *TWTC* prior to 2005, when Plaintiffs commissioned a screenplay for the movie *Omaha* from the Handfields, from which they say *TWTC* was copied. Proof of prior creation of *TWTC* bars all of Plaintiffs' remaining claims in this case against the Handfields, and extensive, indisputable evidence establishes that Mr. Brown wrote multiple drafts of *TWTC* in the 1990s, and that these scripts contain all of the material elements that Plaintiffs assert were copied from *Omaha*. None of the personal insults or twisted conspiracy theories that Plaintiffs assert can overcome this lynchpin fact. Nor can their claims that the Defendants "manufactured" the mass of evidence that disproves Plaintiffs' claims. Thus, summary judgment/adjudication should be granted.

Finally, as an ancillary issue, Plaintiffs' Claim for Unjust Enrichment does not exist in California as a claim for relief, but only as an equitable remedy. As such, this Court should at the very least dismiss Plaintiffs' Unjust Enrichment claim.

## 2. FACTUAL BACKGROUND

### A. THE ALLEGED STORY-THEFT CLAIMS.

*TWTC* is a movie about baseball released in 2012. A DVD copy of *TWTC* has been lodged with the Court [Warner Brothers defendants Notice of Lodging Dkt. # 60], and it credits Warner Defendant Randy Brown as the screenwriter. *TWTC* was directed by Warner Defendant Robert Lorenz, produced by Warner Defendant Michele Weisler, among others, and distributed by Warner Defendants Warner Bros. Distributing Inc. and Warner Bros. Home Entertainment Inc. Clint Eastwood starred in the movie as the aging baseball scout "Gus," and Amy Adams co-starred as Gus's daughter "Mickey." Justin Timberlake played a scout/former-baseball-prospect/Mickey's-love-interest, "Johnny." [*See, e.g.*, Pearson Decl. (Dkt. # 53-3) Ex. A].

Plaintiffs have also named several non-Warner Defendants as defendants, claiming they conspired with the Warner Defendants to "steal" *Omaha* and copied it to create *TWTC*.  [*See*, *e.g.*, FAC ¶ 199; *infra* n.3].  These additional defendants are Don and Tressa, who Plaintiffs say wrote the *Omaha* script at Plaintiffs' direction; Don's former agent (Charles Ferraro) and agency (United Talent Agency); and agent Jay Cohen and The Gersh Agency. [*Id.*]

Plaintiffs' complaint is *331* paragraphs long, but only one fact matters:  That is that Randy Brown wrote *TWTC* in the mid-1990s, some 10 years before Plaintiffs admit they first conceived and commissioned the script for the movie *Omaha*. [*See* SUF 1; FAC ¶¶ 45, 46, 63]. This simple fact of prior creation bars each of Plaintiffs' 12 story-theft based claims for relief in this case – as each is premised on the allegation that defendants copied *TWTC* from *Omaha*.[1]

---

[1]  *See* FAC ¶¶ 199 (**Claim 1**; copyright infringement; alleging a "willful, and malicious effort by Defendants/Co-Conspirators to steal the core plot and story of Gold Glove Productions' copyrighted, original, protected expression of a father/ daughter baseball story that was to be made into a motion picture, camouflage it, and pass it off as the script and later-made motion picture, *Trouble with the Curve*"), 210 (**Claim 2**; contributory copyright infringement; same), 224 (**Claim 3**; vicarious copyright infringement; same), 237 (**Claim 4**; breach of contract; "Defendants/Co-Conspirators Handfield and DiFiglia breached the[ir agreements with Plaintiffs] as part of the conspiracy alleged herein by providing copies of the original screenplay for *Omaha* … to the other Co-Conspirators"), 252 (**Claim 5**; tortious interference; "Defendants/Co-Conspirators executed a plan to infringe upon Plaintiff Gold Glove Productions' unique, copyrighted father-daughter baseball story"); 254 (**Claim 6**; unjust enrichment; "Defendants/Co-Conspirators Handfield and DiFiglia have benefited from the unauthorized use and/or appropriation of Gold Glove Productions' copyrighted screenplay for *Omaha*"); 259 (**Claim 7**; conversion; "[e]ach Defendant, as part of the conspiracy alleged herein, wrongfully converted and disposed of Gold Glove Productions' rights by misappropriating the screenplay *Omaha*"); 269 (**Claim 8**; RICO; "Defendants/Co-Conspirators infringed upon the three copyrighted scripts and the copyrighted concept reel of *Omaha* as part of a highly illegal scheme and scam"); 279 (**Claim 9**; CAL. BUS. & PROF. CODE § 17200; "Defendants'/Co-Conspirators' (footnote continued)

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Plaintiffs, of course, never approached defendants to discuss these claims of copying before filing this lawsuit.  As soon as the complaint was filed, the Warner Defendants provided Plaintiffs with evidence that, despite their conspiracy theories:

- Mr. Brown wrote his *TWTC* script in the 1990s;

- His script contained all of the elements Plaintiffs claim were stolen;

- Mr. Brown sold his *TWTC* script to a third-party production company, The Bubble Factory, in 1997, and it marketed it widely; and

- Mr. Brown and others maintained physical and electronic copies of the 1990s scripts and other documents and evidence to prove the above.  [*See* Pearson Decl. (Dkt. # 53-1) Ex. B. (Dkt. # 53-3 pgs. 3-13)].

Without taking a pause to review the evidence, Plaintiffs called this evidence of prior creation a "fraud" and "manufactured."  [Pearson Decl. (Dkt. # 53-1) Exs. C-F (Dkt. # 53-3 pgs. 14-49)].

To address these irresponsible claims and put this wasteful lawsuit to an end, the Warner Defendants retained computer forensics expert Scott Cooper to date the electronic copies of the *TWTC* scripts that Mr. Brown had saved on seven floppy disks. Mr. Cooper identified 10 readable *TWTC* files saved on the disks.  [*See* Cooper Decl. ¶ 8 (Dkt. # 59) & Ex. 1 (Dkt. # 59-1) at 4].  He forensically dated each file to well before

––––––––––––––––––––

conduct was fraudulent in that it attempted to deceive reasonable consumers by stealing the potential award-winning story of *Omaha* and passing it off to consumers as their own original work, by camouflaging it as the resulting infringing work, *Trouble with the Curve*"); 284 (**Claim 10**; false promise; "[the Handfields had] been showing the proprietary scripts around to others, and ultimately copied this copyrighted work and tried to camouflage it as the work of another"); 290 (**Claim 11**; breach of the covenant of good faith and fair dealing; "[the Handfields] unfairly interfered with Gold Glove Productions' right to receive the benefits of these contracts by… misappropriating and infringing Gold Glove Productions' copyrights"); 293 (**Claim 12**; accounting; alleging "illegally derived profits" based on the alleged copying conspiracy).

2005, when Plaintiffs allegedly commissioned *Omaha* from the Handfields.[2]   The Warner Defendants apprised Plaintiffs of these results and invited Plaintiffs to take a pause in this litigation. [Pearson Decl. (Dkt. # 53-1) Ex. E (Dkt. # 53-3 pgs. 20-24)]. Again, without reviewing the files Mr. Cooper examined, Plaintiffs declared this evidence a "fraud" and charged ahead.  [*Id.* Ex. (Dkt. # 53-3) E-F].

To avoid needless cost, the Warner Defendants began work on their motion for summary judgment and gathered testimonial, documentary, and other forensic evidence of *TWTC*'s prior creation from Mr. Brown and various third parties. The Warner Defendants provided Plaintiffs this evidence, in the form of sworn declarations weeks before filing their motion.  [*Id.* Ex. G].   This mass of evidence—which is limited in scope, and does not include all of the evidence one could gather[3]—includes the following:

- *The declaration of Neil Landau, Mr. Brown's former screenwriting professor at UCLA.*  Prof. Landau attests that Mr. Brown wrote *TWTC* in his class in the mid-

---

[2] *See id.* Ex. 1 at 3-4.  Cooper forensically dated the files as follows: (1) a file named "Trouble 2 4.0," last saved on the disk on March 17, 1997; (2)  a file named "Trouble 2nd draft," last saved on the disk on March 22, 1997; (3) a file named "Trouble 7 - Neil notes," last saved on the disk on August 21, 1997; (4) a file named "Dan & Pat draft," last saved on the disk on September 17, 1997; (5) a file named "Dan/Pat/Randy," last saved on the disk on September 18, 1997; (6) a file named "Trouble - Gina draft," last saved on the disk on December 5, 1997; (7) a file named "Bubble Factory 2," last saved on the disk on January 30, 1998; (8) a file named "Bubble Factory 3," last saved on the disk on May 1, 1998; (9) a file named "BubPunch.fdr," created on the floppy disc on December 23, 2001; and (10) a file named "BubPunch.fdr," created on the floppy disc on March 20, 2003.  [*Id.*]

[3] For example, at the outset of this case, counsel for the Warner Defendants received an unsolicited phone call from an agent saying that he remembered reading *TWTC* in the early 2000s and considering the script for one of his actor clients.  He refuted Plaintiffs' copying claims and volunteered to testify.  Only in a desire to save costs and spare the Court's time have the Warner Defendants not submitted more evidence like this.  [*See* Pearson Decl. (Dkt. #53-1) Ex. G (Dkt. # 53-3) at 67].

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1990s.  [Landau Decl. (Dk.t # 55) ¶ 5].  Prof. Landau reviewed multiple drafts of Mr. Brown's *TWTC* script in class, later workshops, and one-on-one writing consultations.  [*Id.*].  Prof. Landau attests that the versions of the script he reviewed in the 1990s contained all of the key story elements that Plaintiffs claim were stolen from *Omaha*. [*Id.* ¶¶ 6, 13]. Prof. Landau confirms he has no personal or financial interest in *TWTC*; that he had never seen nor heard of Plaintiffs or *Omaha* until this lawsuit, and that to date, he has still never seen or read *Omaha*.  [*Id.* ¶¶ 1, 15].

- *The declaration of Bill Sheinberg, co-founder of The Bubble Factory.* Mr. Sheinberg testifies that he reviewed *TWTC* in 1997 as a potential production project for his company and helped decide to option the script.  [Sheinberg Decl. (Dkt. #  56) ¶ 3]. Mr. Sheinberg kept a *TWTC* file, in which he located a copy of Mr. Brown's initial "September 1997" script that he submitted, as well as a detailed Coverage Report of the script dated "September 14, 1997." [*Id.* ¶¶ 4-5, 17; Exs. (Dkt. # 56-1) A-B]. This script and Coverage Report confirm that Mr. Brown's 1997 *TWTC* script contained <u>all</u> of the story elements that Plaintiffs claim the defendants stole from *Omaha.* Mr. Sheinberg identified two additional copies of the *TWTC* script from 1997 and 1998, which show the same, and he further submits the option agreements and extensions he negotiated with Mr. Brown for *TWTC*.  [*Id.* ¶¶ 8-10, 17 & Exs. C-H (Dkt #s 56-1, 56-2)].  He also provides several submission letters The Bubble Factory sent to actors and agents, including Dustin Hoffman and Paul Newman in 1997 through 2001 to generate interest in *TWTC*.  [*Id.* Exs. (Dkt # 56-2) I-P].  The letters describe *TWTC* as the very story that Plaintiffs falsely contend Mr. Brown stole—*i.e.*, a "character piece center[ed] on the relationship between a father and a daughter with the world of minor league baseball scouting as a back-drop."  [*Id.* Ex. K]. Mr. Sheinberg confirms he has no personal or financial interest in *TWTC* and never heard of Plaintiffs or *Omaha* until this lawsuit.  [*Id.* (Dkt. # 56) ¶¶ 1, 16].

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

- *The declaration of Gerard Bocaccio, a former executive at The Bubble Factory who now teaches at New York University.*  Mr. Bocaccio read *TWTC* in 1997 and 1998, provided Mr. Brown notes on the script, and brought the project to The Bubble Factory.  [Bocaccio Decl. (Dkt. # 27) ¶ 4].  He sent most of the submission letters that went to third parties to market *TWTC*.  [*Id.* ¶ 5].  Mr. Bocaccio has no personal or financial interest in *TWTC* and never heard of Plaintiffs or *Omaha* until this lawsuit. [*Id.* ¶¶ 1, 9].

- *The declaration of Marcy Morris, Mr. Brown's former attorney.*  Ms. Morris was involved in The Bubble Factory option deal, and located in her files a copy of Mr. Brown's *TWTC* script dated "2/98," as well as copies of the option agreements. [Morris Decl. (Dkt. # 58) ¶¶ 3-4 Exs. (Dkt. # 58-1) A-C].

- *The declaration of Randy Brown.*  Mr. Brown attests he wrote *TWTC* in Prof. Landau's class in the mid-1990s, and that the script was complete by 1997, when he submitted it to The Bubble Factory. [Brown Decl.  (Dkt. # 54) ¶¶ 2-6, 10-12].  He explains the origins of some key characters and elements in *TWTC* and describes his writing process and efforts to get *TWTC* produced in the 1990s and early 2000s.  [*Id.* ¶ 10-12].  Mr. Brown attests he never heard of Plaintiffs or *Omaha* before this lawsuit, and that he still has not seen or read *Omaha*.  [*Id.* ¶ 1].  He also states that as he wrote *TWTC*, he saved various drafts of the script on floppy disks, which he located in his desk at home after this lawsuit was filed.  [*Id.* ¶ 7-8 & Exs. (Dkt. # 54-1) A-J].

- *The report of Scott Cooper, a leading computer forensics expert.*  Mr. Cooper analyzed Mr. Brown's seven floppy disks, and found 10 readable *TWTC* files. [Cooper Decl. (Dkt. # 59) ¶ 8 & Ex. (Dkt. # 59-1) 1; *supra* n.4].  He dated each file based on the date they were saved onto the disk, or in the case of two files that were created on the disk initially, the date they were created.  [*Id.* Ex. 1 at 3-4].  His "observations and conclusions … are unambiguous":  "Every

observation supports, and no observation contradicts that the 'Trouble' script was materially underway by 3/17/97."  [*Id.* at 3].

The evidence is comprehensive and consistent. Mr. Brown wrote *TWTC* years before *Omaha* was created.  [SUF 1].  This simple fact bars all of Plaintiffs' story-theft based claims in this case, and Plaintiffs' wild, unsubstantiated claims that such evidence is a "fraud" cannot stave off this motion.

## B. THE REMAINING BREACH-OF-CONTRACT-BASED CLAIMS.

The FAC alleges that "[o]n or about June 13, 2008, Omaha, LLC, a subsidiary of Plaintiff Gold Glove Productions, and Back to the Lab, Inc. f/s/o Don Handfield and Tressa  DiFiglia entered into a Writer Agreement." [FAC ¶ 87]. A copy of the 2008 Writer Agreement is attached to the FAC as Exhibit "I". [FAC ¶ 86, Exb. "I"].

The FAC alleges that under the 2008 Writer Agreement, Don, acting through his loan out company, Back to the Lab, Inc., and his wife, Tressa, agreed to "perform writing services on a 'work-for-hire' basis for Omaha, LLC in connection with the existing screenplay currently entitled *'Omaha'* (the 'Picture')." [FAC ¶ 87]. The FAC then states that the 2008 Writer Agreement, and all associated copyrights, were assigned by Omaha, LLC to GGP [FAC ¶ 87, Exb. "J"].  Under the 2008 Writer Agreement, the Handfields were to write a final draft of the screenplay *Omaha* incorporating the notes shared by Brooks, and other materials to which they were given access. [FAC ¶ 87].

Plaintiffs claim the Handfields breached the 2008 Writer Agreement, in addition to Plaintiffs' false story-theft claims addressed above, by turning in the their script past the August 8, 2008 deadline and by not incorporating all of Plaintiffs' notes in the final script that was turned in nine weeks late on October 13, 2008. [FAC ¶ 94, 97; SUF 2].

Plaintiffs then allege that they "retained Darin Frank's firm (at the time) of Eisner & Frank to inform [the Handfields] they were in breach of the [2008] Writer Agreement. Hence, on November 5, 2008, Jill Varon of Eisner & Frank sent Back to the Lab, Inc., [and the Handfields] a letter care of their lawyer Dale de la Torre, Esq. of

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

Jacobson Russell Saltz & Fingerman by email, fax and first class mail. The letter is single-spaced and uses three pages to detail the complete dereliction of duties by [the Handfields]." [FAC ¶ 96; de la Torre Decl. ¶ 3, Exb. "2"; SUF 2].

Plaintiffs claim that said November 5, 2008 letter was to constitute a "default notice" for the Handfields' "complete disregard for the Notes and total lack of conscientiousness and professionalism, Producer is unable to use, or salvage any part of the draft [the Handfields] turned in on October 13, 2008." [FAC ¶ 97; de la Torre Decl. ¶ 3, Exb. 2; SUF 2]. The November 5, 2008 letter then claimed that Plaintiffs were damaged in 2008 by the Handfields' alleged conduct by stating: "As a result, Producer has wasted close to a year of valuable time, money and effort on this matter, which is completely unacceptable and has caused, and will continue to cause, considerable budgetary increases." [FAC ¶ 97; de la Torre Decl. ¶ 3, Exb. 2, SUF 2].

Mr. de la Torre sent a letter on behalf of the Handfields in response to said November 5, 2008 "default notice" dated November 20, 2008 denying Plaintiffs' claims and demanding full payment for services rendered. [FAC ¶ 98; de la Torre Decl. ¶ 4, Exb. "3"]. Plaintiffs' attorney then replied with a letter dated November 25, 2008 continuing to declare that Plaintiffs had suffered damages as a result of the Handfields' alleged wrongdoing. [de la Torre Decl. ¶ 5, Exb. "4"].

These same breach-of-contract-based allegations of wrongdoing are now being pursued against the Handfields separate and apart from Plaintiffs' story-theft claims in Plaintiffs' Fourth Claim for Relief for Breach of Contract by incorporation [FAC ¶¶ 94-100, 233]; Fifth Claim for Relief for Tortious Interference With Prospective Economic Advantage by express allegation [FAC ¶¶ 244, 245]; Plaintiffs' Tenth Claim for Relief for False Promise by express allegation [FAC ¶ 282]; and Plaintiffs' Eleventh Claim for Relief for Breach of Covenant of Good Faith And Fair Dealing by express allegation [FAC ¶ 290].

Plaintiffs did not file their Original Complaint until October 1, 2008. [See Original Complaint on file with this Court]. Thus, because Plaintiffs claimed in writing

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

in November 2008 that it was aware that the alleged October 2008 breach of the 2008 Writer Agreement had purportedly caused Plaintiffs damage, all of Plaintiffs' remaining contract-based claims are well beyond all applicable statute of limitations and are thus time barred as a matter of law.

### 3. STANDARD OF REVIEW.

The Court shall grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. [Fed. R. Civ. P., R. 56(a)]. Rule 56 further provides that a defending party may move for summary judgment, or summary adjudication, on certain claims in controversy or certain parts of claims in controversy. [Fed. R. Civ. P., R. 56(a)].

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery that demonstrate the absence of a genuine issue of material fact. [*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)]. Where the non-moving party bears the burden of proof at trial, the moving party need only point out that there is an absence of evidence supporting the non-moving party's claims. [*Devereuax v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)].

Once the moving party carries its initial burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings. [*Id.*; Fed. R. Civ. P., R. 56(c)].  Rather, the non-moving party must present evidence supporting his or her position through affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial." [*Devereuax v. Abbey*, *supra*, 263 F.3d at 1076].

### 4. ARGUMENT

#### A. THE HANDFIELD DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE STORY-THEFT CLAIMS AS TO EACH OF THE TWELVE CAUSES OF ACTION.

The Warner Defendants have filed a Motion for Summary Judgment that overwhelming establishes, through fact and case law, that Defendant Mr. Brown

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

independently created *TWTC* with all of its similarities to *Omaha* a full decade before Plaintiffs even thought of the story idea for *Omaha,* let alone hired the Handfields to write it. As such, for the sake of economy, there is no reason to repeat all of the facts and arguments put forward by the Warner Defendants here. Therefore, the Handfields, by this reference, hereby join in all facts and arguments put forward by the Warner Defendants in their Motion for Summary Judgment and incorporate them herein at this point as if they were set forth in full in support of the Handfields' Motion for Summary Judgment/Adjudication.

As the Warner Defendants' Motion for Summary Judgment overwhelmingly establishes that Mr. Brown had independently created *TWTC* nearly 10 years before Plaintiffs' *Omaha* was even contemplated or developed, all of Plaintiffs' story-theft claims against the Handfields automatically fail, and thus summary judgment/adjudication is proper in the Handfields' favor on all story-theft claims in each of Plaintiffs' twelve claims for relief.

### B. ALL OF PLAINTIFFS' REMAINING CONTRACT-BASED CLAIMS AGAINST THE HANDFIELDS ARE BARRED BY THE STATUTE OF LIMITATIONS AS A MATTER OF LAW, AND THEREFORE MUST BE DISMISSED.

In addition to Plaintiffs' false story-theft claims addressed above, the FAC also seeks to hold the Handfields responsible for breach of the 2008 Writer Agreement for allegedly not complying with a writing deadline in August 2008 or submitting a polished version of *Omaha* to Mr. Brook's satisfaction. [See FAC ¶¶ 94-100, 233, 244, 245, 282, 290]. Despite the complete lack of merit of said claims, it is undisputed that such claims are completely barred by the statute of limitations as a matter of law and therefore must be dismissed.

A federal court must generally apply the law of the forum state regarding whether an action is barred by the statute of limitations. [*Guaranty Trust Co. v. York,* 326 U.S. 99, 109-10 (1945); also see *Hendrix v. Novartis Pharm. Corp.*, 2013 U.S. Dist. LEXIS 143936, CCH Prod. Liab. Rep. P19248 (C.D. Cal. Oct. 2, 2013)]. As

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

such, California State law and precedent regarding the statute of limitations in controlling here.

Statutes of limitation are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim, it is unjust not to put an adversary on notice to defend within the period of limitation; the right to be free of stale claims comes, in time, to prevail over the right to prosecute a claim [*see Gutierrez v. Mofid,* 39 Cal.3d 892, 898 (1985)]. They are intended to enable defendants to marshal evidence while memories and facts are fresh and to provide defendants with repose for past acts [*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison,* 18 Cal.4th 739, 755 (1998)].

Thus, civil statutes of limitations protect defendants from the necessity of defending stale claims and require plaintiffs to pursue their claims diligently [*Romano v. Rockwell Internat., Inc.,*14 Cal.4th 479, 488 (1996); *see Downs v. Department of Water & Power,* 58 Cal.App.4th 1093, 1099-1100 (1997)   (fundamental purpose underlying statute of limitations is to protect defendants from having to defend against stale claims by providing notice in time to prepare a fair defense on the merits and second policy is to require plaintiffs to diligently pursue their claims)].

A statute of limitation operates against the right of action, not against the holder of that right [*Record Machine & Tool Co. v. Pageman Holding Corp*., 172 Cal.App.2d 164, 174 (1959)]. Because statutes of limitations prescribe definite periods of time within which actions may be brought or certain steps may be taken, *they are adamant rather than flexible in nature*. Statutes of limitation are upheld and enforced regardless of personal hardship [*Chas. L. Harney, Inc. v. State of California* 217 Cal.App.2d 77, 91 (1963)].

The statute of limitation to be applied in a case ordinarily is determined by the nature of the right sued upon, not by the form of the action or the relief demanded [*Davies v. Krasna* 14 Cal.3d 502, 515 (1973)]. Similarly stated, what is significant for

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

1  statute of limitation purposes is the primary interest invaded by the defendant's

2  wrongful conduct. [*Barton v. New United Motor Manufacturing, Inc.* 43 Cal.App.4th

3  1200, 1207 (1996)].

4         Thus, in determining which statute of limitation applies in a given case, the

5  court looks beyond the relief sought and considers instead the basic cause of action

6  giving rise to the plaintiff's right to relief [*see Leeper v. Beltrami,* 53 Cal.2d 195, 214

7  (1959)]. The court must identify the nature of the cause of action, that is, the gravamen

8  of the cause of action. [*People ex rel Dept. of Conservation v. Triplett,* 48 Cal.App.4th

9  233, 244 (1996)]. The nature of the cause of action and the primary right involved, not

10  the form or label of the cause of action or the relief demanded, determine which statute

11  of limitations applies [*Carter v. Prime Healthcare Paradise Valley LLC,* 198

12  Cal.App.4th 396, 412 (2011)].

13         In ordinary tort and contract actions, the statute of limitations begins to run on

14  the occurrence of the last element essential to the cause of action. [*Norgart v. Upjohn*

15  *Co.,* 21 Cal.4th 383, 389, 397 (1999) (when cause of action is complete with all its

16  elements); *see also Keru Investments, Inc. v. Cube Co*., 63 Cal.App.4th 1412, 1423

17  (1998) (cause of action accrues at moment party who owns it is entitled to bring or

18  prosecute action thereon)].

19         Thus, for example, it has been said that an action accrues on the date of injury.

20  [*Naftzger v. American Numismatic Society,* 42 Cal.App.4th 421, 428 (1996); *see San*

21  *Francisco Unified School Dist. v. W. R. Grace & Co.,* 37 Cal.App.4th 1318, 1326

22  (1995) (no cause of action accrues until there is damage)].

23         Here, the alleged duty to meet a writing deadline and submit a polished final

24  draft of a script to Mr. Brook's satisfaction containing his notes arises solely from the

25  2008 Writer Agreement. [See FAC ¶¶ 94-100]. Thus the primary claim at issue with

26  regard to such obligations is breach of contract. Plaintiffs' breach of contract related

27  claims (i.e., Fourth, Fifth, Tenth, and Eleventh Claims for Relief) therefore would have

28  a statute of limitations of four (4) years from knowledge of a breach of contract. [See

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909

*Code Civ. Proc.* § 337]. Said statute of limitations would be the longest statute of limitations to apply even if certain of Plaintiffs' claims sounded in tort.

The FAC, on its face, expressly alleges that Plaintiffs declared a breach of contract through a written "default notice" dated November 5, 2008 for the Handfields' alleged failure to timely meet a writing deadline in August 2008 and to submit a script to Mr. Brook's satisfaction incorporating his notes. [FAC ¶ 97; SUF 2]. The November 5, 2008 letter referenced in the FAC expressly memorializes that Plaintiffs claimed to be aware that such alleged breach of contract had caused an injury. [SUF 2; See Decl. de la Torre, Exb. "2" ("Writer's unprofessional behavior severely contributed to the delays on the Picture, <u>and has caused our client to incur unnecessary time and expense</u> in connection therewith." … "Producer has wasted close to a year of valuable time, money and effort on this matter, which is completely unacceptable and <u>has caused, and will continue to cause, considerable budgetary increases</u>.")].

Thus, the FAC admits on its face that Plaintiffs had direct knowledge of said alleged breaches of the 2008 Writer Agreement in November 2008 (even though the Handfields deny any such breach), and declared a breach of said agreement in writing at that time by identifying its awareness it had suffered damage thereby. Yet, the Original Complaint filed in this case by Plaintiffs seeking damage for these alleged breaches of the 2008 Writer Agreement identified by Plaintiffs in the November 5, 2008 "default notice" was not filed until October 1, 2013 – one year too late [See Original Complaint on file with this Court].

Therefore, aside from the fact that Plaintiffs' breach-of-contract-based claims lack merit, all of Plaintiffs' breach-of-contract-based claims reliant upon the writing deadlines and failing to submit a satisfactory script are indisputably time barred and summary judgment/adjudication must be granted as to them as a matter of law.

### C. SUMMARY ADJUDICATION AS TO PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS PROPER, AS THERE IS NO SUCH CAUSE OF ACTION IN CALIFORNIA.

Simply put, there is no such thing as a cause of action for unjust enrichment in California.   Claims of unjust enrichment are remedies, not causes of action. [See *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1370 (2010); *Melchior v. New Line Prods. Inc.,* 106 Cal.App.4th 779, 790-91 (2003) (holding "there is no cause of action in California for unjust enrichment")]. Such has long been the finding in the Ninth Circuit and the basis for automatic dismissal of such claims under Rule 12(b)(6). [See *Bosinger v. Belden CDT, Inc.*, 358 Fed.Appx. 812, 815 (9th Cir. Cal. 2009) ("In California there is no cause of action for unjust enrichment; it is a 'general principle, underlying various legal doctrines and remedies, rather than a remedy itself.'"); also see *In re Mortgage Elec. Registration Sys. (MERS) Litig.,* 2011 U.S. Dist. LEXIS 7232 (D. Ariz. Jan. 25, 2011); also see *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 2010 U.S. Dist. LEXIS 131330, *202-*203 (C.D. Cal. Nov. 30, 2010) ("Courts consistently have held that unjust enrichment is not a proper cause of action under California law. [ ] Simply put, 'there is no cause of action in California for unjust enrichment.' Therefore, Plaintiffs' claim for unjust enrichment fails to state a claim for which relief may be granted.")].

Accordingly, the dismissal of Plaintiffs' Unjust Enrichment claim is appropriate.

### 5. CONCLUSION

The evidence is overwhelming and beyond dispute that the Mr. Brown created *TWTC* a decade before Plaintiffs even imagined their story *Omaha,* let alone hired the Handfields to write *Omaha* at Plaintiffs' direction. Thus, it is impossible for the Handfields to have given Mr. Brown that which he already had ten years prior. Therefore Summary judgment/adjudication is appropriate to dismiss all of Plaintiffs' story-theft based claims.

Additionally, the Handfields did not breach the 2008 Writer Agreement. Regardless, Plaintiffs' claims that the Handfields did breach the 2008 Writer

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel.310.446.9900 • Fax 310.446.9909

Agreement are time barred by the statute of limitations, as this case was filed 5 years after Plaintiffs stated in writing that it declared a breach of said contract. Therefore summary judgment/adjudication is mandatory as a matter of law for all of Plaintiffs' contract-based claims against the Handfields.

Finally, there is no such thing as a claim for relief for Unjust Enrichment. Thus summary judgment/adjudication is mandatory as a matter of law to dismiss Plaintiffs' claim for unjust enrichment.

In conclusion, the Handfields respectfully request that their motion for summary judgment/adjudication should be granted, and this wasteful and misguided case should be brought to a decisive end.

Dated: December 6, 2013

**Jacobson, Russell, Saltz, Nassim & de la Torre, LLP**


_____/S/_____
Michael J. Saltz, Esq.,
Attorneys for Defendants Don Handfield and
Tressa DiFiglia Handfield

JACOBSON, RUSSELL, SALTZ, NASSIM & DE LA TORRE, LLP
10866 Wilshire Boulevard, Suite 1550
Los Angeles, California 90024
Tel. 310.446.9900 • Fax 310.446.9909