| | |
|---|---|
| 1 | DANIEL M. PETROCELLI (S.B. #97802) |
| 2 |   dpetrocelli@omm.com<br>MATTHEW T. KLINE (S.B. #211640) |
| 3 |   mkline@omm.com (Lead Counsel) |
| 4 | ASHLEY PEARSON (S.B. #281223)<br>  apearson@omm.com |
| 5 | O'MELVENY & MYERS LLP<br>1999 Avenue of the Stars, 7th Floor |
| 6 | Los Angeles, CA  90067-6035<br>Telephone:   (310) 553-6700 |
| 7 | Facsimile:    (310) 246-6779 |
| 8 | Attorneys for Defendants |
| 9 | Warner Bros. Studio Enterprises Inc.,<br>The Malpaso Company, Inc., Warner Bros. |
| 10 | Distributing Inc., Warner Bros. Home<br>Entertainment Inc., Warner Communications |
| 11 | Inc., TW UK Holdings Inc., Robert Lorenz,<br>Michele Weisler, and Randy Brown |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GOLD GLOVE PRODUCTIONS, LLC, a California Limited Liability Company and RYAN A. BROOKS, an individual,<br><br>            Plaintiffs,<br><br>       v.<br><br>DON HANDFIELD, an individual, TRESSA DIFIGLIA HANDFIELD, an individual, RANDY BROWN, an individual, MICHELE WEISLER, an individual, CHARLES FERRARO, an individual, JAY COHEN, an individual, ROBERT LORENZ, an individual, UNITED TALENT AGENCY, INC., a California corporation, THE GERSH AGENCY, a California corporation, WARNER BROS. PICTURES INC., a Delaware corporation, MALPASO PRODUCTIONS, LTD., a California corporation, WARNER BROS. DISTRIBUTING INC., a Delaware corporation, WARNER BROS. HOME ENTERTAINMENT INC., a Delaware corporation, WARNER BROS. DOMESTIC TELEVISION | Case No.  CV13-07247-DSF (RZx)<br><br>**WARNER DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR ORDER SETTING AND CLARIFYING TIME FOR PLAINTIFFS' COUNSEL TO FILE OPPOSITION BRIEFS TO SIX MOTIONS FOR SUMMARY JUDGMENT**<br><br>The Hon. Dale S. Fischer |

1  DISTRIBUTION, INC., a Delaware
   corporation, TW UK HOLDINGS,
2  INC., a Delaware corporation, and
   DOES 1-10, inclusive
3
       Defendants.
4

1  Plaintiffs' *ex parte* application should be denied because it violates the
2  central rule governing such requests: the so-called "emergency" relief that
3  Plaintiffs' counsel seek is caused entirely by their own *admitted neglect*. *See, e.g.*,
4  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal.
5  1995) (party submitting *ex parte* application must establish that it "is without fault
6  in creating the crisis that requires ex parte relief"); *Charley v. Chevron USA*, 2010
7  WL 2792486, at *1 (C.D. Cal. July 13, 2010) (*ex parte* application denied because
8  applicant "created the purported 'emergency'"); Docket No. 6 at 16:2-3, 20
9  (Court's standing order).

10  1. On November 24, 2013, lead counsel for both the Warner Defendants and
11  Plaintiffs agreed, *in writing*, to a briefing schedule on the Warner Defendants'
12  motion for summary judgment. *See* Docket No. 113-1 ("Liu Decl." ) Ex. 2 at 1.
13  Lead counsel for the Warner Defendants (Matt Kline) proposed that defendants
14  would move for summary judgment on December 6, 2013, and notice the motion
15  for hearing on February 24, 2014; plaintiffs would file any opposition on January
16  27, 2014; and the Warner Defendants would file any reply on February 7, 2014. *Id.*
17  Plaintiffs' lead counsel, Gerard Fox, stated: "Your schedule is fine," *id.*, and the
18  Warner Defendants have relied on that agreed-upon schedule for the past two
19  months, as they managed their busy schedules, and planned to prepare their reply
20  brief on their summary judgment motion. *Id*. Ex. 4-5.

21  Plaintiffs concede this agreement was reached in November 2013, but offer a
22  litany of excuses for why they have failed to abide by it: Mr. Fox failed to calendar
23  the agreement; the agreement was made near a holiday; Mr. Fox receives many
24  emails a day; and the parties never formalized their agreement in a stipulation. No
25  "formalization" occurred because none was necessary. Mr. Fox wanted extra time
26  to respond to the Warner Defendants' motion, *see, e.g.*, Docket No. 98-3 at 71;
27  counsel for the Warner Defendants proposed a schedule to accommodate both
28  parties, *see* Liu Decl. Ex. 2 at 1; and Mr. Fox accepted the schedule, in writing, and

1  without any reservation and without any request for a formal stipulation, *see id*.

2  　　　2. The agreed-upon schedule that the Warner Defendants proposed was and is eminently fair. The Warner Defendants gave Plaintiffs full notice of the facts and law on which their motion for summary judgment would rely on November 8, 2013—**26** days before the Warner Defendants even filed their motion. Under the parties' November 24 agreement, the Warner Defendants then gave Plaintiffs **51** days to oppose the Warner Defendants' motion. Plaintiffs now demand an extra 7 days to oppose—leaving the Warner Defendants only **4** days to prepare and file any reply brief under the parties' agreement (or 7 days at most under the Local Rules). The relief Plaintiffs seek is not remotely fair and directly contravenes the letter and purpose of the scheduling agreement that the parties freely made months ago.

　　　That Mr. Fox failed to forward the parties' written agreement to his assistant, his team, or his calendaring clerk is *his* fault—and a far cry from the type of real emergency justifying the "extraordinary relief" of an *ex parte* application. *See Mission Power Eng'g Co.*, 883 F. Supp. at 492 ("[F]iling an ex parte motion…is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire."); Docket No. 6 at 16:2-3, 20.

　　　3. Plaintiffs have been anything but focused or diligent in responding to the Warner Defendants' summary judgment motion. Ignoring the virtual mountain of undisputed evidence that the Warner Defendants adduced showing that the movie *Trouble with the Curve* ("*TWTC*") was created years before plaintiffs' *Omaha* script, *see* Docket Nos. 99-104, Plaintiffs filed an abjectly frivolous motion for summary judgment of their own, *see* Docket No. 66, which ignored almost all of this prior-creation evidence and the Warner Defendants' then-pending summary judgment motion, *see* Docket No. 98 at 4-6, 9-13. The Warner Defendants have already opposed Plaintiffs' motion and shown how *TWTC* and *Omaha* are not similar works as a matter of clear copyright law. *See* Docket No. 108 at 3-13.

　　　Rather than complete briefing on these two pending motions, Plaintiffs want

- 2 -　　　　　　　　　　　　　WARNER DEFS.' EX PARTE OPP.

1   to launch yet another series of baseless "forensic" investigations—*none* of which is
2   necessary to the Warner Defendants' summary judgment motion or the "similarity"
3   analysis presented in Plaintiffs' motion. Plaintiffs' reckless claims of evidentiary
4   "fraud"—tellingly unsupported by any evidence—should not be a reason to delay
5   final resolutions of the parties' pending summary judgment motions. Plaintiffs'
6   unending, hysterical, and defamatory claims about defendants and their counsel are
7   the very reason why the parties' dispositive motions should be heard, *without delay*,
8   and this frivolous, costly case should be brought to an end.[1]

9       4. Plaintiffs say that they want their supposed "experts" to have more time to
10  do their work, but what this *ex parte* application is really about is trying to prevent
11  Plaintiffs' experts from being deposed. When the Warner Defendants told
12  Plaintiffs that they reserved the right to depose Plaintiffs' alleged forensic experts
13  in the two weeks between when Plaintiffs' summary judgment opposition is due
14  (January 27) and the Warner Defendants' reply brief is due, Plaintiffs objected to
15  the depositions. *See* Docket No. 113 at 3. When the Warner Defendants insisted
16  on their right to take the deposition, Plaintiffs filed this *ex parte* application—
17  seeking to force the Warner Defendants to file any reply brief on their summary
18  judgment motion in just a matter of days, and without time to depose Plaintiffs'
19  "experts." (Plaintiffs filed this improper *ex parte* request knowing that the Warner
20  Defendants' lead counsel is in an arbitration hearing. *See* Liu Decl. Ex. 5.)

21      5. Substantial prejudice will result to the Warner Defendants if Plaintiffs do
22  not file their opposition on January 27. Most obviously, this last-minute change
23  would cut the Warner Defendants' time to draft their reply briefs in half, from 14

---

[1] Plaintiffs' assertion that they were somehow forced to engage in this forensic testing "because of the Defendants' early… motions for summary judgment," Docket No. 113 at 3, is manifestly wrong. The "testing" is, at best, of extremely marginal value to either pending motion for summary judgment.

As for the "two depositions" that Plaintiffs' counsel complain they had to "handle," *id.*—of defendants Randy Brown and Jay Cohen—these depositions were taken *entirely at Plaintiffs' insistence*; defendants complied as a courtesy.

1 days to at most 7 days.  (By contrast, plaintiffs will have 33 days to reply to the
2 Warner Defendants' opposition to their summary judgment motion, also noticed for
3 February 24.  Docket Nos. 66; 108.)  Moreover, the Warner Defendants' counsel
4 relied on the parties' November 24 agreement, and planned schedules for this case
5 and several others—including travel obligations—based on the *agreed-upon* filing
6 dates.  As examples, Mr. Kline has had to attend to two arbitrations in different
7 states, altered deadlines on other cases based on Mr. Fox's agreement, and has
8 booked travel plans when Mr. Fox now asks that the Warner Defendants have a few
9 short days to respond to Plaintiffs' filings.

10       6. For all the reasons above, the Warner Defendants respectfully request that
11 Plaintiffs' *ex parte* application be denied.  Plaintiffs should abide by the parties'
12 written agreement and file their opposition to the Warner Defendants' motion for
13 summary judgment on January 27, 2014.

Dated:  January 22, 2014

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Matthew T. Kline
     Matthew T. Kline
Lead Counsel for Warner Defendants

OMM_US:72069651