1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com (Lead Counsel)
3   ASHLEY PEARSON (S.B. #281223)
      apearson@omm.com
4   O'MELVENY & MYERS LLP
5   1999 Avenue of the Stars, 7th Floor
    Los Angeles, CA  90067-6035
6   Telephone:  (310) 553-6700
    Facsimile:   (310) 246-6779
7

8   Attorneys for Defendants
    Warner Bros. Studio Enterprises Inc.,
9   The Malpaso Company, Inc., Warner Bros.
    Distributing Inc., Warner Bros. Home
10  Entertainment Inc., Warner Communications
    Inc., TW UK Holdings Inc., Robert Lorenz,
11  Michele Weisler, and Randy Brown

12
                **UNITED STATES DISTRICT COURT**
13
                **CENTRAL DISTRICT OF CALIFORNIA**
14

| 15 | GOLD GLOVE PRODUCTIONS, LLC, a California Limited Liability Company and RYAN A. BROOKS, an individual, | Case No.  CV13-07247-DSF (RZx) |
|----|----|----|
| 16 | | **WARNER DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A RULE 56(D) CONTINUANCE** |
| 17 | Plaintiffs, | |
| 18 | v. | DECLARATION OF MATTHEW T. KLINE FILED HEREWITH |
| 19 | DON HANDFIELD, an individual, TRESSA DIFIGLIA HANDFIELD, an individual, RANDY BROWN, an individual, MICHELE WEISLER, an individual, CHARLES FERRARO, an individual, JAY COHEN, an individual, ROBERT LORENZ, an individual, UNITED TALENT AGENCY, INC., a California corporation, THE GERSH AGENCY, a California corporation, WARNER BROS. PICTURES INC., a Delaware corporation, MALPASO PRODUCTIONS, LTD., a California corporation, WARNER BROS. DISTRIBUTING INC., a Delaware corporation, WARNER BROS. HOME ENTERTAINMENT INC., a Delaware corporation, WARNER BROS. DOMESTIC TELEVISION | The Hon. Dale S. Fischer |
| 20 | | |
| 21 | | **Hearing Date:**  February 24, 2014 |
| 22 | | **Hearing Time:**  1:30 p.m. |
| 23 | | **Courtroom:**  840 |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1    DISTRIBUTION, INC., a Delaware
     corporation, TW UK HOLDINGS,
2    INC., a Delaware corporation, and
     DOES 1-10, inclusive
3
                   Defendants.
4

5    _____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.     Introduction**

Plaintiffs' motion for a Rule 56(d) continuance should be denied because it fails to meet the Rule's dictates, and because this case is fully briefed, presents clear, dispositive legal issues ripe for resolution, and can and should be brought to an end before plaintiffs cause it to spiral out of control.  A party may obtain a Rule 56(d) continuance only if (1) it has diligently pursued the discovery it seeks, *and* (2) the new discovery sought would preclude summary judgment.  Plaintiffs' request to put this case indefinitely on hold—so that they can take nine depositions that they *never noticed* before moving for a continuance, and pursue lines of inquiry irrelevant to the Warner Defendants' pending motions—meets neither dictate.

Starting in October 2013 (110 days ago), the Warner Defendants provided plaintiffs with *still-undisputed evidence* from five third-party witnesses, all of whom established through contemporaneous documents and sworn testimony that defendant Randy Brown wrote and sold *Trouble with the Curve* ("*TWTC*") to the Bubble Factory in 1997, *eight years* before plaintiffs assert they wrote *Omaha*.  On November 8, 2013—almost 90 days ago—the Warner Defendants provided plaintiffs with these five witnesses' declarations and all of the evidence cited in Warner's now-pending summary judgment motion.  Docket No. ("DN") 98-1 Ex. G.  At plaintiffs' request, Warner held off on filing this prior-creation summary judgment motion for a month, and then, once they did file, gave plaintiffs two more months to respond and take any allegedly needed discovery to address the motion.  DN 114 at 1:10-2:9.

Since then, *plaintiffs have not noticed a single deposition of any one of these five third-party witnesses*.  Indeed, the first time they stated any interest in deposing them was the day before they moved for a continuance and opposed Warner's motion.  Moreover, despite the reckless and abjectly false claims of evidentiary "fraud" that plaintiffs have made in this case, neither plaintiffs nor their putative "forensic" experts have *ever once* asked to inspect any one of these declarants'

WARNER DEFS.' 56(D) OPP.

1   documents.  Plaintiffs pursued no discovery of any of these witnesses—*none*—for

2   almost 90 days, and yet they have made their specious fraud claims—claims that

3   these declarants' *still-undisputed* evidence clearly, plainly, and decisively refutes.

4       Plaintiffs now say they need to depose these third-party declarants to show

5   their "bias."  Not only are such bias claims wholly unsubstantiated, Ninth Circuit

6   case law on the issue is clear—and has been for decades.  Bias is *not* a ground to

7   defeat summary judgment, *see, e.g.*, *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986,

8   997 (9th Cir. 2001), and nor is it a basis to seek a Rule 56(d) continuance, *see, e.g.*,

9   *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97

10  (9th Cir. 1983) ("neither a desire to cross-examine an affiant nor an unspecified

11  hope of undermining his or her credibility suffices to avert summary judgment").

12      As for the four defendants plaintiffs wish to depose, plaintiffs never noticed

13  their depositions before filing this motion, and cannot explain how their testimony

14  is needed to resolve the Warner Defendants' pending motions.  None knew Brown

15  in the 1990s when he wrote *TWTC*, and they only met him *after* he sold *TWTC* to

16  The Bubble Factory in 1997 (Michelle Weisler and Robert Lorenz), *after* he sold

17  *TWTC* to Malpaso in 2011 (Charles Ferarro), or *never* (Don Handfield).

18      There is another clear reason to deny plaintiffs' motion—one originally

19  asserted by plaintiffs themselves.  As a matter of law and without resort to *any*

20  testimony, the Court can and should review the *TWTC* movie and plaintiffs' *Omaha*

21  script, and assess whether the two are legally "similar."  Well-established Ninth

22  Circuit copyright law holds that they are not, as the only parts of *Omaha* that

23  plaintiffs assert are copied in *TWTC*—and there are scant few—are unprotected

24  story ideas, scenes-á-faire, and stock characters that may not, as a matter of law,

25  give rise to a copying claim.  DN 108-10.  This is a pure legal issue that courts are

26  readily capable of deciding without testimony or discovery.  Indeed, it is *plaintiffs*

27  who moved for summary judgment on this issue, arguing the Court could resolve it

28

WARNER DEFS.' 56(D) OPP.

1  as a matter of law, and the Warner Defendants then cross-moved on this issue.

2  Courts regularly deny requests for discovery to oppose such "similarity" motions.

3      In short, this case should never have been filed, and it certainly should not be

4  prolonged now. *TWTC* and *Omaha* are not remotely similar works under the Ninth

5  Circuit copyright law, and plaintiffs knew both before they filed their lawsuit,[1] and

6  in the days and weeks after, that there was a mountain of *percipient* evidence from

7  independent third-parties—including respected members of the bar, and professors

8  at UCLA and NYU—that proves that Brown created and sold *TWTC* in the 1990s.

9  Plaintiffs' reckless evidentiary fraud claims, which do not address the legal issues

10  or evidence above (but rather attack strawman versions of Warner's defenses), are

11  utterly without merit and will be refuted in Warner's reply filings due next week.

12  **II.   Plaintiffs' Request for Delay Violates Rule 56(d).**

13      A party may obtain a Rule 56(d) continuance only if can show (a) it

14  "diligently pursued its previous discovery opportunities"; and (b) the additional

15  discovery would "preclude[] summary judgment." *Qualls v. Blue Cross of Cal.,*

16  *Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). Plaintiffs can meet neither requirement.

17      A. On November 8, 2013, the Warner Defendants provided plaintiffs with

18  all of the evidence on which their prior-creation motion for summary judgment

19  relies. DN 98-1 Ex. G. Warner's motion was premised on one material fact—*i.e.*,

20  that "Brown completed drafts of [*TWTC*] in 1997 and 1998, years before Plaintiffs

21  conceived or wrote *Omaha*," DN 98-4 at 1—and well-established copyright rules,

22  holding that "it is impossible to *copy* something that does not yet exist." *Christian*

23  *v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002); DN 98 at 7 n.6 (more cases).

24      Appendix 1 to Warner's motion, DN 98-2, showed how each of the 30-plus

25  elements that *TWTC* allegedly copied from *Omaha* appeared in a September 1997

26  *TWTC* script that Brown sent the Bubble Factory, and that the Bubble Factory had

---

[1] Plaintiffs' complaint concedes that they obtained a copy of *TWTC* dating back
to the 1990s before they even filed suit. DN 46 ¶ 107.

analyzed in a September 14, 1997 "Coverage Report."  DN 101 ¶¶ 4-8 & Exs. A, Q, B (Bill Sheinberg authenticating September 1997 script and Coverage Report).

In addition to this case-ending evidence, *see* DN 98 at 6-9, 13-16 (collecting cases concerning quantum of proof necessary to prevail on prior-creation motion), the Warner Defendants provided plaintiffs with other, similarly undisputed evidence from third parties Bill Sheinberg (of the Bubble Factory), Marcy Morris (of the law firm Jackoway Tyerman Wertheimer Austen Mandelbaum Morris & Klein), Gerard Boccaccio (of NYU), and Neil Landau (of UCLA).  It included:

- Contracts between the Bubble Factory and Brown starting in 1997, in which the Bubble Factory optioned Brown's *TWTC* script, DN 101 ¶¶ 8-9 & Exs. D, E, G-H (Sheinberg); DN 103 ¶¶ 2-7 & Exs. A & B (Morris);

- Four other hard-copy drafts of *TWTC* from 1997 and 1998, which were kept in the files of the Bubble Factory and Morris's law firm, DN 101 ¶¶ 10-11 & Exs. C, F, S, U, V, W; DN 103 ¶¶ 2-7 & Ex. C;[2]

- Eight submission letters that the Bubble Factory sent, between 1997 and 2001, to market *TWTC* to third parties, DN 101 ¶¶ 12-13 & Exs. I-P (Shineberg); DN 102 ¶¶ 5-6 (Bocaccio authenticating letters as well);[3]

- A detailed, faxed September 14, 1997, "Coverage Report" analyzing and summarizing *TWTC*'s contents, and showing that the allegedly copied elements in *TWTC* were all present in 1997, DN 101 ¶¶ 6-8 & Ex. B;[4] and

---

[2] Some 110 days ago, the Warner Defendants sent plaintiffs the February 1998 *TWTC* script from Morris' files, DN 103 Ex. C, along with a detailed chart showing how the 1998 draft of *TWTC* contained *every* element that plaintiffs alleged was copied from *Omaha*, DN 98-1 ¶ 4 & Ex. B at 45-49.

[3] The letters summarize the contents of *TWTC* as of the date each letter was sent, and each shows, in detailed ways, how plaintiffs' claims of copying are baseless. *See, e.g.*, DN 98 at 11-12 & nn.7-8.

[4] The author of this Coverage Report (Carrie Gadsby) later submitted a second declaration authenticating her "Coverage Report" as well.  *See* DN 112 Ex. Y.

1   • An article authored by Landau well before this lawsuit was filed, in which
2     he described how Brown wrote the first draft of *TWTC* in the 1990s in
3     Landau's class at UCLA, DN 100 Ex. C.

4   B.  In the three months that plaintiffs have had to respond to this evidence,
5   they have done *nothing to contest any of it*—not any of the declarations these five
6   witnesses, not any of the documentary evidence they authenticated or explained,
7   and not any of the charts the Warner Defendants provided (including Appendix 1 to
8   Warner's prior-creation motion), which show how all of the alleged stolen elements
9   in *TWTC* predated *Omaha* by close to a decade.

10   Plaintiffs have not noticed a deposition for a single one of these witnesses.
11   They never served a single document request.  And they have not had their so-
12   called "forensic" experts examine a single piece of evidence cited above—despite
13   our invitations, starting in November, that they do so.  Kline Decl. ¶¶ 3-4 & Ex. A.

14   Rule 56(d) is not a tool to reward plaintiffs' "tactical decision" to ignore
15   these five declarants' testimony for months—and, instead, in that time to file a
16   (baseless) summary judgment motion that ignores this evidence or to have their
17   forensic "experts" examine evidence that defendants *did not cite* in their prior-
18   creation motion.  *E.g.*, *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th
19   Cir. 2004) (affirming denial of Rule 56(f) [now "d"] motion where plaintiffs "made
20   a tactical decision" not to depose a witness and attack evidence not at issue in
21   motion); *see also Cook v. Allstate Ins. Co.,* 337 F. Supp. 2d 1206, 1209 (C.D. Cal.
22   2004) (Fischer, J.) ("the mere hope that further evidence may develop prior to trial
23   is an insufficient basis to grant a Rule 56(f) continuance"); *Continental Maritime v.*
24   *Pac. Coast Metal Trades Dist. Council*, 817 F.2d 1391, 1395 (9th Cir. 1987).[5]

25   In late November, plaintiffs agreed to the briefing schedule on the Warner

26
27   [5] Rather than diligently prosecute the case to address the real evidence, plaintiffs
     have worked with a "PR" firm to promote their salacious claims in the press.  *E.g.*,
     Kline Decl. ¶ 6 & Exs. D & E.  The Warner Defendants will address plaintiffs'
28   spurious *and* irrelevant "fraud" attacks in reply briefing due next week.

1   Defendants' summary judgment motion.  DN 114 at 1:10-2:9.   Since early

2   November, they knew the evidence on which Warner's motion would rely.  DN 98-

3   1 Ex. G.  Yet they never asked for dates or times to depose any of the five third-

4   party declarants above.  Instead, on the day that their summary judgment opposition

5   was due, plaintiffs accused Sheinberg (a respected lawyer and executive), Morris (a

6   leading lawyer in her field), Gadsby (a respected non-profit executive), and Landau

7   and Boccaccio (respected professors at UCLA and NYU) of being "highly biased,"

8   DN 132 ¶ 6, 9, 10 (G. Fox Decl.), and submitting declarations "Tied to Fabricated

9   Evidence," DN 120 at 22:1-24:11.  These reckless accusations are unsupported.[6]

10       These bias claims are also wholly inadequate to defeat summary judgment or

11   obtain a continuance.  The case law has been clear on this point for decades, *e.g.*:

12   • *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) ("A

13       party opposing summary judgment may not simply question the

14       credibility of the movant to foreclose summary judgment.");

15   • *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701

16       F.2d 95, 97 (9th Cir. 1983) (rejecting asserted biases of witnesses as

17       ground to deny summary judgment; holding that "neither a desire to

18       cross-examine an affiant nor an unspecified hope of undermining his or

19       her credibility suffices to avert summary judgment");

20

21

22

23       [6] Each declarant swore he or she had no "interest" in *TWTC*, DN 100 ¶ 1; 101
     ¶ 1; 102 ¶ 1; 103 ¶ 1, and plaintiffs cite no competent evidence to suggest any is
24   biased, much less committed a fraud.  Plaintiffs cite *nothing* for their assertions that
     Morris "appears to be friends with Brown," DN 132 ¶ 8, or that Sheinberg "is tied
25   to most of the Defendants in many ways," DN 138 at 5.  Also unsupported is their
     claim that Landau is Brown's "closest friend," DN 132 ¶ 6—Landau attested that
26   he and Brown ended their dealings on bad terms and "have not spoken for some
     time," DN 100 ¶ 16.  Plaintiffs' questioning of Gadsby based on her LinkedIn
27   profile, DN 132 ¶ 10, is absurd and comes nowhere near satisfying their Rule 56(d)
     burden to show this is not a fishing expedition.  *See supra* at 5 (collecting cases).
28

- *Eaton v. NBC*, 972 F. Supp. 1019, 1024 (E.D. Va. 1997) (copyright plaintiff cannot base opposition to summary judgment "on the hope that a fact finder will disbelieve the persons who have submitted affidavits").

The Warner Defendants cited this law and more in their motion for summary judgment, DN 98 at 14:8-15:3 & n.10, and plaintiffs offer no response to it.

C.  Plaintiffs also have no good cause to delay the case to depose defendants Michelle Weisler, Rob Lorenz, Charles Ferraro, and Don Handfield.  They noticed none of these depositions in the four months before filing their continuance motion, never subpoenaed any of these witnesses to produce documents, and cannot now show good cause to depose these witnesses.[7]

The only two defendants with percipient knowledge of Brown's creation of *TWTC* in the 1990s have already been deposed—*i.e.*, Randy Brown (the only defendant to submit a declaration in support of the Warner Defendants' summary judgment motion) and Jay Cohen (who the Bubble Factory approached in the 1990s to help get *TWTC* produced).  Kline Decl. ¶¶ 4, 5 & Exs. B & C.  Both Brown and Cohen refuted plaintiffs' conspiracy theories of how Brown got access to *Omaha*— Cohen denied ever even having seen or heard of *Omaha* until this lawsuit; and Brown explained that he did not hire Handfield's agent, Charles Ferraro, until *after* he sold *TWTC* to Warner in 2011.  *Id.* Ex. C at 15:18-42:1, 16:22-25, 20:24-21:4 (Brown); *id.* Ex. B at 10:20-23 (Cohen); Docket No. 99 ¶ 1.  Plaintiffs offer no other evidence of "access," and this, too, bars their copying claims.  DN 98 at 6-7.

Cohen, moreover, confirmed that he worked in the late 1990s and early 2000s to promote *TWTC*, including with the third-party production companies for which he worked (Punch Productions, founded by Dustin Hoffman), and Cosmic Entertainment (founded by Kurt Russell and Goldie Hawn).  Kline Decl. Ex. B at 8:9-15, 9:6-21.  Cohen also confirmed that the September 14, 1997, "Coverage

---

[7] Days after filing this motion, plaintiffs noticed Ms. Weisler's deposition to take place on February 13.  *See* Kline Decl. ¶ 4.

1    Report" accurately reflected the *TWTC* script he remembered reading and

2    marketing in the late 1990s and early 2000s.  *Id.* at 11:4-15.

3          As to the four defendants that plaintiffs still seek to depose—Weisler,

4    Lorenz, Ferraro, and Handfield—plaintiffs provide no explanation as to how their

5    testimony is needed to address what they concede is the only material issue on the

6    Warner Defendants' motion:  the date of creation of *TWTC*.  DN 120-2.  None of

7    the four defendants submitted a declaration in support of Warner's motion—and

8    this makes sense, as none was involved in *TWTC* until *2011* (if at all), years *after*

9    Brown wrote the *TWTC* script and sold it to the Bubble Factory.

10         As Brown testified, he met Weisler, a producer, in 2011, and after working

11   on some edits with her, she sent *TWTC* to Lorenz for his consideration.  Kline Decl.

12   Ex. C at 17:12-19:23.  *TWTC* was already written at that point, and as Appendix 1

13   to the Warner Defendants' motion shows, the *TWTC* script, as of the late 1990s,

14   already included *every element* that plaintiffs allege was stolen from *Omaha*.  *See*

15   DN 98-2.  Brown likewise confirmed that he never met Ferraro until "October or

16   November 2011," *after* Brown closed his deal with Lorenz for *TWTC*.  Kline Decl.

17   Ex. C at 15:18-16:1, 16:22-25, 20:24-21:4.  Brown has never met Handfield, ever

18   read his *Omaha* script, and only first heard of *Omaha* when this case was filed.  *Id.*

19   at 22:6-19; DN 99 ¶ 1.  These four defendants are not witnesses to the original

20   creation of *TWTC*.  Delaying this case for their depositions is an unnecessary waste

21   of time and resources—in a case that has already lasted much too long.

22   **III.    The Parties' Pending *Similarity* Cross-Motions Bar Plaintiffs' Request.**

23         There is another simple reason to deny plaintiff's Rule 56(d) application.

24   Plaintiffs' pending motion for summary judgment on "similarity grounds"—which

25   defendants all cross-moved on—requires *none* of the discovery that plaintiffs now

26   seek.  DN 108-10.  "[T]he application of [the similarity] test presents a legal

27   question that the Court [] independently consider[s] and resolve[s]."  *Milano v.*

28   *NBC Universal, Inc.*, 584 F. Supp. 2d 1288, 1291 (C.D. Cal. 2008).  Indeed, courts

1   deny requests for more discovery in copyright cases on precisely this ground, *e.g.*:

2      &bull;  *Crane v. Poetic Prods. Ltd.*, 549 F. Supp. 2d 566, 570 (S.D.N.Y. 2008)

3          (denying 56(f) motion where summary judgment motion focused on

4          similarity question; that issue "can be decided based on a comparison of

5          the two works without the need to consider any extrinsic evidence");

6      &bull;  *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 291 (S.D.N.Y. 2005) (same:

7          Because the relevant inquiry for summary judgment . . . focuses on the

8          substantial similarities between Plaintiff's screenplay and Defendants'

9          finished film, both of which are in evidence, the Court finds that there is

10         sufficient evidence upon which to decide Defendants' motion for partial

11         summary judgment and that Plaintiff does not require additional

12         discovery.").

13       The depositions and delay with which the plaintiffs seek to burden the parties

14  will have no impact on the Court's legal comparison of the two works at issue, nor

15  can such discovery "preclude summary judgment" on these grounds.  *Qualls*, 22

16  F.3d at 844.  The "similarity" issues in this case are plain and easy to resolve under

17  Ninth Circuit law, *see* DN 108-09, and no discovery is needed on them, and nor do

18  they present any fact issue, *e.g.*, *Kouf v. Walt Disney Pictures & Tele.*, 16 F.3d

19  1042, 1044 (9th Cir. 1994) (finding no substantial similarity as a matter of law);

20  *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990) ("[w]e have frequently

21  affirmed summary judgment in favor of copyright defendants on the issue of

22  substantial similarity").

23  **IV.  Conclusion**

24       Plaintiffs' Rule 56(d) motion should be denied and judgment should be

25  entered for defendants.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  February 7, 2014

Respectfully submitted,

O'MELVENY & MYERS LLP

By:  /s/ Matthew T. Kline

Matthew T. Kline
Lead Counsel for Warner Defendants

OMM_US:72094905

WARNER DEFS.' 56(D) OPP.