## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | CV 13–7247 DSF (RZx) | Date | 2/24/14 |
|---|---|---|---|

| Title | Gold Glove Productions, LLC, et al. v. Don Handfield, et al. |
|---|---|

Present: The Honorable     DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING Warner Defendants' Cross-Motion for Summary Judgment re Similarity (Docket No. 109), DENYING Plaintiffs' Motion for Partial Summary Judgment (Docket No. 66), DENYING Defendants' Motion for Summary Judgment re Prior Creation as MOOT (Docket Nos. 98, 63), DENYING Warner Defendants' Motion to Strike Expert Testimony as MOOT (Docket No. 110), DENYING Plaintiffs' Motions for Continuance (Docket Nos. 138, 151, 155, 158), DENYING Handfield Defendants' Motion for Summary Judgment as MOOT (Docket No. 83), DENYING Gersh Defendants' Motion to Dismiss as MOOT (Docket No. 65), and GRANTING UTA Defendants' Motion to Strike (Docket No. 70)

    Plaintiffs Gold Glove Productions, LLC (Gold Glove) and Ryan Brooks bring copyright infringement and related claims arising from the release of the 2012 Warner Brothers motion picture Trouble with the Curve (TWTC). Plaintiffs move for partial summary judgment and for a continuance of Defendants' motions. Defendants move for summary judgment or dismissal on various grounds.

## I. UNDISPUTED FACTS

    Plaintiffs contend that TWTC is an intentional infringement of the screenplay Omaha, written by Brooks. Brooks registered Omaha with the United States Copyright Office on May 15, 2006. (Statement of Genuine Issues re Pls.' Mot. for Partial Summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Judgment (SGI) ¶ 84.)[1]  <u>TWTC</u> was released in the United States by Warner Brothers
Pictures on September 21, 2012.  (SGI ¶¶ 5, 8.)  Defendant Randy Brown is credited as
the writer of <u>TWTC</u>.  (<u>Id.</u> ¶¶ 5, 10.)  Defendants assert that Brown wrote early drafts of
<u>TWTC</u> in the late 1990s, well before <u>Omaha</u> was written.  (<u>Id.</u> ¶ 19.)  Plaintiffs dispute
this, contending that Defendants' evidence of prior creation is fabricated.  (<u>See generally</u>
Docket No. 120, Pls.' Opp'n to Mot. for Summ. J. re Prior Creation.)   Plaintiffs further
argue that <u>TWTC</u> was not written by Brown, but by Defendant Don Handfield, who
helped Brooks write <u>Omaha</u>.  (Pls.' Mot. for Partial Summ. J. 2-3; SGI ¶ 77.)

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  Where the moving party has the burden of proof at trial, it
must establish "beyond controversy every essential element" of its claim.  <u>So. Cal. Gas
Co. v. City of Santa Ana</u>, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks
omitted).  "This burden is not a light one."  <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376,
387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies
this burden, the party opposing the motion must set forth specific facts, through affidavits
or admissible discovery materials, showing that there exists a genuine issue for trial.  <u>Id.</u>
at 323-24; Fed. R. Civ. P. 56(c)(1).  In ruling on a summary judgment motion, the Court
must construe the evidence in the light most favorable to the non-moving party.  <u>Nolan v.
Heald College</u>, 551 F.3d 1148, 1154 (9th Cir. 2009).

"[W]hen parties submit cross-motions for summary judgment, each motion must be
considered on its own merits."  <u>Fair Hous. Council of Riverside Cnty., Inc. v. Riverside
Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and brackets
omitted).  In doing so, the Court must consider the appropriate evidentiary material
identified and submitted in support of both motions before ruling on each of them.  <u>Id.</u>

## III.  DISCUSSION

### A.    Substantial Similarity

"A plaintiff bringing a claim for copyright infringement must demonstrate (1)
ownership of a valid copyright, and (2) copying of constituent elements of the work that

---

[1]  Brooks subsequently assigned the rights for <u>Omaha</u> to Plaintiff Gold Glove.  (SGI ¶ 85.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

are original." Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006) (citation and quotation marks omitted).  Both Plaintiffs and Defendants have moved for summary judgment on the second element – the similarity between the two works.[2]  "A grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded." Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1330 (9th Cir. 1983). Summary judgment for a defendant "is appropriate if no reasonable juror could find substantial similarity of ideas and expression." Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 624 (9th Cir. 2010) (citation and quotation marks omitted).  "Substantial similarity is a fact-specific inquiry, but it may often be decided as a matter of law." Id. (citation and quotation marks omitted).  "Indeed, [the Ninth Circuit has] frequently affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity." Id. (citation and quotation marks omitted); see also Funky Films, 462 F.3d 1072; Cavalier v. Random House, Inc., 297 F.3d 815 (9th Cir. 2002); Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042 (9th Cir. 1994).

The Ninth Circuit employs two tests for determining whether a work is substantially similar to another:  the "intrinsic test" and the "extrinsic test." Benay, 607 F.3d at 624.  "At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." Funky Films, 462 F.3d at 1077.  "A plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." Id. (citation and quotation marks omitted).  "The extrinsic test is an objective test based on specific expressive elements:  the test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works. . . .  A court must take care to inquire only whether the protect[able] elements, standing alone, are substantially similar." Benay, 607 F.3d at 624 (citation and quotation marks omitted).  "Copyright law only protects expression of ideas, not the ideas themselves." Cavalier, 297 F.3d at 823. Therefore, "[f]amiliar stock scenes and themes that are staples of literature are not protected" and "[s]cenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." Id.

With these principles in mind, the Court has examined the Omaha script, (Decl. of David M. Yerkes, Ex. C (Omaha Script)), the most recent TWTC script, (Id., Ex. D

---

[2] Defendants' Cross-motion for Summary Judgment on the issue of similarity incorporates by reference their Opposition to Plaintiffs' Partial Motion for Summary Judgment.  (See Docket Nos. 108, 109.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

(<u>TWTC</u> Script)), the <u>TWTC</u> film itself, and the <u>Omaha</u> concept reel – copies of which were lodged with chambers.  Plaintiffs have submitted the testimony of three purported experts with respect to the similarity issue:  Richard Walter, a film professor at UCLA, (<u>see</u> Decl. of Richard Walter (Walter Decl.)), Sheril D. Antonio, a dean and professor at NYU's Tisch School for the Arts, (<u>see</u> Decl. of Sheril D. Antonio in Support of Pls.' Partial Mot. for Summ. J., Ex. A (Antonio Report); Decl. of Sheril D. Antonio in Support of Pls.' Opp'n to Defs.' Mot. for Summ. J. (Antonio Suppl. Report)), and David M. Yerkes, a comparative literature and English professor at Columbia University, (<u>see</u> Decl. of David M. Yerkes, Ex. B (Yerkes Report)).  As explained below, the Court finds that any similarities between the two works are not protectable as a matter of copyright law, even after considering the opinions of Plaintiffs' experts.[3]

### 1.  Plot & Sequence of Events

Plaintiffs' experts contend that the two plots are substantially similar.  Walter summarizes both plots as follows:

> A cranky, set-in-his-ways, curmudgeonly old baseball lifer confronts the possibility his contract may not be renewed.  He conceals a degenerative illness.  His beloved wife is long dead, a fact he cannot accept, and this has rendered him further removed.  He has one child, a daughter in her early 30s, from whom he's grown distant since his wife, her mother, died.  Neither seems able to bridge the expanding distance.  The daughter has a job and life of her own, outside of baseball.  The daughter starts the story wanting to limit her time with her dad.  However, in both stories the father's illness causes him to reach out to his daughter to move her into his life.  It is through this illness that they break down their walls, open up about how the mother's death provoked the distance between the two.  The daughter ends up back squarely in the father's life, in love with a younger baseball type who is a colleague of dad's and each even plays some baseball with their dad in a climactic, emotionally touching scene.

(Walter Decl. ¶ 21.)  This plot description – which is not completely accurate – is conveniently crafted in generalities, such that major differences in the two plots are either

---

[3] The Court therefore need not address Defendants' motion to strike the declarations of these experts.  (<u>See</u> Docket No. 110.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

papered over or ignored.  But even aside from these differences – which are discussed below – the idea of a father-daughter baseball story is not protectable as a matter of copyright law.  See Benay, 607 F.3d at 625 ("In applying the extrinsic test, we look beyond the vague, abstracted idea of a general plot.") (citation and quotation marks omitted); Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir. 2002) ("General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind.") (citation omitted).

Indeed, the Ninth Circuit has affirmed summary judgment for copyright defendants with respect to works sharing much more unique plot similarities.  In Funky Films, a copyright infringement case involving the HBO miniseries Six Feet Under, "both works concern[ed] a narrative about a small funeral home, and the lives of the family members who operate it; plot-lines involving the death of the father . . . [who] has for decades run the business; . . . and the presence of two sons who receive equal shares of the business, with the older son . . . liv[ing] in a distant city, working outside the funeral industry." Funky Films, 462 F.3d at 1077 (citation and quotation marks omitted).  And in Benay, "[i]n both the Screenplay and the Film, an American war veteran travels to Japan in the 1870s to train the Imperial Army in modern Western warfare in order to combat a samurai uprising." Benay, 607 F.3d at 625.  "In both, the protagonist starts in America and travels to Japan where he meets the Emperor, who is struggling to modernize Japan. Both protagonists introduce modern warfare to the Imperial Army, using contemporary Western weaponry and tactics.  Both works feature a Japanese foil in the form of the leader of the samurai rebellion.  And in both works the protagonist suffers a personal crisis and is transformed as a result of his interaction with the samurai." Id.

In Funky Films, the Ninth Circuit stated, "[a]t first blush, these apparent similarities in plot appear significant; however, an actual reading of the two works reveals greater, more significant differences and few real similarities." Funky Films, 462 F.3d at 1078.  The same can be said here.  Walter's summary ignores that the older male character in Omaha, Coach Dodge, is a college baseball coach, while the parallel character in TWTC, Gus, is a major league baseball scout.  This difference has a significant impact on respective plots.  In Omaha, the primary baseball storyline follows an underdog college baseball team's quest to win a championship.  In contrast, the primary baseball storyline in TWTC involves Gus and other major league baseball scouts following a high school baseball prospect in North Carolina.  In telling these stories, the two works differ significantly – Omaha following a team through its games to a climactic loss in a final round of the championship, and TWTC following a scout's observations of a baseball prospect to a climactic decision as to which player the team should draft. There are also major differences with respect to the father-daughter story.  The daughter in Omaha, Sandy, is a single mother who yields to her father's requests that she and her two sons move in with him while she completes her college degree.  Mickey, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

daughter in <u>TWTC</u>, is a high-powered attorney gunning for partner in her law firm who joins her father – over his protests – on the road in North Carolina as he scouts the prospect.  And although both Gus and Coach Dodge suffer from illnesses in the two stories, they differ both in magnitude and in their effect on the plot.  Due to his terminal cancer – which is not revealed to Sandy until late in the story – Coach Dodge struggles to survive to coach his team through the season.[4]  Gus's glaucoma, in contrast, is revealed to Mickey at the beginning of the story and, although an obstacle to his scouting career, is not life-threatening.  In fact, Gus is ultimately able to continue as a scout in spite of it.  There are also minor storylines in <u>Omaha</u> that have no analog in <u>TWTC</u> – such as the two rival teammates who become friends after an injury, and storylines relating to Sandy's children.[5]  Minor storylines in <u>TWTC</u> also lack parallels in <u>Omaha</u> – such as Mickey's competition with a fellow associate to make partner, and Mickey's discovery of a pitching prospect.

Plaintiffs' experts point to other similarities:  that Gus and Coach Dodge both get into car accidents on account of their illness, and that the fathers and daughters play baseball with each other.  (<u>See</u> Walter Decl. ¶¶ 4, 27; Antonio Suppl. Report ¶¶ 34-35, 50-52.)  But these are minor scenes that are ancillary to the central plot.  <u>See</u> <u>Benay</u>, 607 F.3d at 624-25 ("Scenes-a-faire, or situations  and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement.") (citation and quotation marks omitted).

The Court also gives no weight to the "identical sequences of identical details" identified in the Yerkes Report.  (<u>See</u> Yerkes Report, App'x I.)  These scenes are by no means identical.  Rather, Yerkes appears to have selected excerpts from different parts of each script that contain irrelevant similarities – such as the character "walk[ing]" or "sipping" or "look[ing] down."  (Yerkes Report, App'x I, §§ 7, 9.)  Yerkes then purports to compute the statistical likelihood that the pages would share such similarities.  Even ignoring the numerous statistical flaws in this analysis, the Court finds it irrelevant.  The plot and sequence of events of two works cannot be compared at such a granular level, where some similarities will always be present.

## 2.    Characters

In terms of personality, the characters of Gus and Coach Dodge are similar.  They are both gruff, old-school, irascible, stubborn widowers who miss their wives and have

---

[4]  The script implies that Coach Dodge dies soon after his team's last game.

[5]  Walter concedes that Sandy's status as a single mother "has an impact in part on how the daughter story progresses."  (Walter Decl. ¶ 20.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

difficulty communicating with their daughters.  (See Walter Decl. ¶¶ 15-16; Antonio Report 8.)  But this is far from a unique character.  Rather, it is one that "flow[s] naturally from the works' shared premises" of an older baseball-devoted father attempting to become closer with his daughter.  See Benay, 607 F.3d at 626.[6]

The two daughters, Sandy and Mickey – despite both being named after baseball icons, (Walter Decl. ¶ 27) – are very different.  Mickey is a single, workaholic partner-track attorney who lives in downtown Atlanta.  Her estrangement from her father stems from Gus's decision to send Mickey to live with his brother after she was nearly molested on a scouting trip as a child.  At the end of TWTC, Mickey leaves her law career to pursue her true passion, baseball.  Sandy is a single mother of two who works multiple jobs – as a bartender and a telemarketer.  She became estranged from her father after he kicked her out of the house for sleeping with one of his baseball players.  Sandy ultimately goes back to school and graduates college in pursuit of her career as a teacher.

The daughters' respective love interests also differ substantially.  In Omaha, Jimmy is Coach Dodge's assistant coach.  He is sweet and relatively quiet; he does not express his interest in Sandy until near the end of the story.  In TWTC, Johnny is a former player, now a scout and aspiring baseball announcer.  He is slick, flashy, and begins flirting with Mickey when he first meets her.

Nor are there significant similarities with respect to the minor characters.  The "male confidant," (Walter Decl. ¶ 13) – a mere stock character – has a much more significant role in TWTC.  The cocky star baseball player – Bo in TWTC, and Brady in Omaha – is also a stock character.  In Omaha, Brady injures himself, becomes a better team player, and helps lead the team to a shot at the championship.  Bo, in contrast, remains cocky throughout TWTC and fails to live up to his status as a number one draft pick.[7]  There are also other minor characters in both works that have no counterparts, such as Rod Taylor and the grandsons in Omaha, and the Braves' management and scouting department in TWTC.

3.    **Themes**

---

[6]  Other similarities – such as the characters' connection to the Atlanta Braves and propensity to eat junk food for breakfast and drink scotch, (see Walter Decl. ¶ 27; Antonio Report 3) – "are, at best, coincidental."  Funky Films, 462 F.3d at 1081.

[7]  It is also not relevant that Gus and Coach Dodge both have a relationship with a black character in their respective works.  (See Antonio Report 3.)  In TWTC, the character is Lucious – an old scout; in Omaha, the character is Rod Taylor – a young baseball player.  The two characters bear no resemblance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

The two works share themes of father-daughter reconciliation, the breaking down of emotional barriers, and the importance of family.  (See Walter Decl. ¶ 24, Antonio Report 1.)  But these themes are inherent in many father-daughter stories.  The other shared theme identified by Plaintiffs – pitting "old school manner[s] up against new school ways," (Pls.' Reply in Support of Mot. for Partial Summ. J. 6) – is also commonplace in sports movies.  Cf. Benay, 607 F.3d at 627 ("[T]o the extent the works share themes, those themes arise naturally from the premise of an American war veteran who travels to Japan to fight the samurai.").  Further, the underdog theme – which underlies the primary sports storyline in Omaha – appears only at the very end of TWTC, with respect to the minor storyline of the pitching prospect Mickey discovers.

**4.    Setting, Mood, and Pace**

TWTC is set in Atlanta and North Carolina – primarily at high school baseball games.  Omaha takes place predominantly at college baseball games in Nebraska.  The mood and pace also differ in the two works, as Omaha contains a series of baseball games – often shown through montages – that lead to a climactic final loss and to Coach Dodge's impending death.  Although there are also baseball games in TWTC, the focus is not on the outcome of the games but rather on the performance of Bo, the player being scouted.  TWTC ends on a happy note, as Bo fails to perform per Gus's and Mickey's predictions, Gus is able to continue his career as a scout, and Mickey and Johnny begin new careers in baseball.

**5.    Dialogue**

TWTC does not appear to copy Omaha's dialogue.[8]  Plaintiffs' experts primarily point to similar word choices and writing styles, rather than similar portions of dialogue. Broken down to this level, of course, similarities can be found with respect to any two works.  Antonio, for example, points to the use of the word "pissed" in both scripts. (Antonio Report 3.)  Yerkes appears to have catalogued each instance in which the same word is used in both scripts – words as simple as "blue" and "hey" – regardless of the word's context.  (Yerkes Report, App'x IV.)  But here, as in Kouf, "[t]he dialogues are

---

[8]  Walter declares, without citation, that both Gus and Coach Dodge "share similar dialogue, sometimes virtually identical, when arguing with their daughter."  (Walter Decl. ¶ 27.) Although both scripts indeed contain arguments between the father and daughter characters, (see Omaha Script 77-79, TWTC Script 95-98), the Court does not see any significant similarity in the dialogue in those two scenes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

similar in random words, at best." <u>Kouf</u>, 16 F.3d at 1046.  Antonio and Yerkes also point to similarities in the structure of sentences in the two works.  (<u>See</u> Antonio Report 2; Yerkes Report § 10, App'x 5.)  Yerkes goes so far as to compare the number of words used in particular sentences.  (Yerkes Report § 7.)  Although this may be of some relevance to the dispute regarding who wrote <u>TWTC</u>, it has no bearing on the issue of substantial similarity; sentence structure surely is not copyrightable.

 Walter contends that both <u>Omaha</u> and <u>TWTC</u> contain the same "skeletal structure" but are "clothed . . . differently in some places, so as to appear at first more varied than they actually are."  (Walter Decl. ¶ 14.)  Even if this is true, the skeleton is so generic, and the differences so significant, that the remaining similarities are not protectable under copyright law.[9]  After analyzing the above elements, and considering the two works in their entireties, the Court finds as a matter of law that they are not substantially similar. Defendants' motion for summary judgment is GRANTED.

### B. Motion for Continuance Under Fed. R. Civ. P. 56(d)

 Plaintiffs have moved to continue each of Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).  (Docket Nos. 138, 151, 155, 158.)  Plaintiffs complain that they have not had the opportunity to complete discovery on the issues relevant to these motions.  Although the Court would have been inclined to grant the continuance with respect to the motions regarding prior creation, a continuance is not warranted with respect to the issue of substantial similarity – the basis on which the Court now grants summary judgment.  Plaintiffs have not identified, nor can the Court imagine, how any additional discovery would affect the similarity analysis. Indeed, it was Plaintiffs who first moved for summary judgment as to this issue.  (<u>See</u> Docket No. 66.)  The motion for continuance is DENIED.

### C. Motion to Strike FAC

---

[9] Plaintiffs argue that the "inverse ratio" rule should apply here.  "Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work." <u>Benay</u>, 607 F.3d at 625.  But even assuming this relaxed standard applies, Plaintiffs have not met it.  <u>Cf. id.</u> ("Even if the Defendants had access to the Screenplay, the [plaintiffs] have not shown sufficient similarity between the Screenplay and the Film to maintain an infringement claim under federal copyright law."); <u>Funky Films</u>, 462 F.3d at 1081-82 (holding that relaxed inverse ratio standard was not met because "the two works lack any concrete or articulable similarities").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

To the extent this Order does not resolve Plaintiffs' non-copyright causes of action, the Court strikes the First Amended Complaint (FAC). As detailed in the motion filed by the UTA Defendants, (see Docket No. 70), the Complaint egregiously violates Federal Rule of Civil Procedure 8(a)'s "short and plain statement" requirement. Excluding exhibits, the complaint is 112 pages long and contains 331 paragraphs. Much of the FAC is spent touting Plaintiffs' irrelevant accolades, providing unnecessary backstory, and insulting Defendants. (See Docket No. 28 (FAC); UTA Defs.' Mot. to Dismiss or Strike, at 6-8.) A complaint that "is argumentative, prolix, replete with redundancy" and which "consists largely of immaterial background information" warrants dismissal. McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996). Plaintiffs' argument that such details are necessary to plead their allegations of fraud with specificity is frivolous. See id. at 1178 ("A heightened pleading standard is not an invitation to disregard[] Rule 8's requirement of simplicity, directness, and clarity."). Defendants should not bear the burden of answering such a pleading. The Court declines to rule on the other outstanding motions which would require the Court to analyze the FAC in its current form. (See Docket Nos. 65, 83.) Nor will the Court waste its time attempting to determine what should remain in the FAC and what should be stricken. The motion to strike the FAC is GRANTED with leave to amend. Plaintiffs may file a second amended complaint – consistent with this Order and with counsel's obligations under Rules 8 and 11 – which may not exceed 40 pages, excluding exhibits. The second amended complaint must be filed no later than March 24, 2014.

## IV.  CONCLUSION

Defendants' cross-motion for summary judgment re similarity is GRANTED, Plaintiffs' motion for summary judgment re similarity is DENIED, Plaintiffs' motion for continuance is DENIED, and the motion to strike the FAC is GRANTED.  All other outstanding motions are DENIED as MOOT.

IT IS SO ORDERED.