DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com (Lead Counsel)
ASHLEY PEARSON (S.B. #281223)
  apearson@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

Attorneys for Defendants
Warner Bros. Studio Enterprises Inc.,
The Malpaso Company, Inc., Warner Bros.
Distributing Inc., Warner Bros. Home
Entertainment Inc., Warner Communications
Inc., TW UK Holdings Inc., Robert Lorenz,
Michele Weisler, and Randy Brown

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLD GLOVE PRODUCTIONS, LLC, a California Limited Liability Company and RYAN A. BROOKS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DON HANDFIELD, an individual, TRESSA DIFIGLIA HANDFIELD, an individual, RANDY BROWN, an individual, MICHELE WEISLER, an individual, CHARLES FERRARO, an individual, JAY COHEN, an individual, ROBERT LORENZ, an individual, UNITED TALENT AGENCY, INC., a California corporation, THE GERSH AGENCY, a California corporation, WARNER BROS. PICTURES INC., a Delaware corporation, MALPASO PRODUCTIONS, LTD., a California corporation, WARNER BROS. DISTRIBUTING INC., a Delaware corporation, WARNER BROS. HOME ENTERTAINMENT INC., a Delaware corporation, WARNER BROS. DOMESTIC TELEVISION | Case No.  CV13-07247-DSF (RZx)<br><br>**WARNER DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>DECLARATION OF ASHLEY PEARSON AND [PROPOSED] ORDER FILED HEREWITH<br><br>The Hon. Dale S. Fischer<br><br>**Hearing Date:**   June 2, 2014<br>**Hearing Time:**   1:30 p.m.<br>**Courtroom:**   840 |

1   DISTRIBUTION, INC., a Delaware
    corporation, TW UK HOLDINGS,
2   INC., a Delaware corporation, and
    DOES 1-10, inclusive
3
                Defendants.
4

5   _____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

2      PLEASE TAKE NOTICE that on June 2, 2014, at 1:30 p.m., or as soon

3  thereafter as counsel may be heard by the above-entitled court, located in

4  Courtroom 840 at 255 East Temple Street, Los Angeles, California 90012,

5  Defendants Warner Bros. Studio Enterprises Inc., Warner Bros. Distributing Inc.,

6  Warner Bros. Home Entertainment Inc., Warner Communications Inc., TW UK

7  Holdings Inc., The Malpaso Company, Inc., Randy Brown, Michele Weisler, and

8  Robert Lorenz (collectively, the "Warner Defendants"[1]) will and hereby do move,

9  pursuant to Rule 11 of the Federal Rules of Civil Procedure, for sanctions against

10 The Law Offices of Gerard Fox, Inc. and the named counsel representing Plaintiffs

11 in this case (collectively, "Plaintiffs' Counsel").

12     This motion is made following the 21-day notice period required by Rule

13 11(c)(2), as well as numerous conferences of counsel conducted pursuant to Central

14 District Local Rule 7-3 and the Court's Standing Order, Docket No. 6 at 7.  *See,*

15 *e.g.*, Decl. of Ashley Pearson ("Pearson Decl.") Exs. 9, 21.  The Warner Defendants

16 provided plaintiffs with an exact copy of this Motion on January 9, 2014 (save for

17 this sentence and the filing date), in accordance with Rule 11, and plaintiffs stated

18 they would oppose the motion and not withdraw their pleadings.  *Id.*

19     This motion is based on the following grounds:

20     1.  Plaintiffs' Counsel filed an objectively frivolous copyright complaint in

21 this case, laced with reckless, scandalous personal attacks against defendants,

22 accusing them of crimes, fraud, and being imposters.  *See* Docket Nos. 1, 28, 70.

23 Any investigation into the facts underlying this lawsuit or review of the

24 governing copyright, RICO, and California state law on which the complaint is

25 _____

26     [1] Plaintiffs' complaint erroneously names three of the nine Warner Defendants.
   It names Defendant Warner Bros. Studio Enterprises Inc. as "Warner Bros. Pictures
27 Inc."; Warner Communications Inc. as "Warner Bros. Domestic Television
   Distribution, Inc."; and The Malpaso Company, Inc. as "Malpaso Productions,
28 Ltd."  *See* Docket Nos. 1; 28; 45 at 2.

premised would reveal the case was wholly without basis.  So, too, would have contacting Defendants in advance of this filing, which Plaintiffs' Counsel chose not to do, instead publicizing the incendiary lawsuit.  *Id.* ¶ 3 & Exs. 2, 3 at 9.

2.  Plaintiffs' Counsel then compounded the harm by heedlessly pursuing this case and racking up needless fees and costs, despite being provided a virtual mountain of evidence by the Warner Defendants and neutral third parties—all showing that Defendant Randy Brown did *not* copy Plaintiffs' *Omaha* script, but that Brown both completed and sold his *Trouble With The Curve* ("*TWTC*") script to a third-party production company years before *Omaha* was conceived.  Plaintiffs' Counsel's response:  This did not matter because their client came from a family of means, their firm were being paid by the hour (not on contingency), their firm had success suing movie studios, and Plaintiffs' Counsel had hired a team of experts to support their claims.  *Id.* Ex. 7.

3.  The Warner Defendants gave Plaintiffs' Counsel numerous opportunities to take a pause in this litigation to review the evidence and to dismiss this ill-founded case.  Instead of doing so, Plaintiffs' Counsel reflexively called each delivery of case-dispositive evidence a "fraud" or "manufactured"—and not only pressed forward with the case, but filed an objectively frivolous summary judgment motion, attesting there were no disputed issues of fact.  That motion included a stack of objectively baseless expert reports; the sorts of reports that are regularly rejected in copyright cases, and that, *far worse*, deliberately ignored the extensive evidence the Warner Defendants adduced showing the independent creation of *TWTC*.  Plaintiffs' motion—which tellingly did not cite a single case or legal authority granting the relief they sought on even remotely similar facts—compelled the Warner Defendants to spend even more money defending the case.  Indeed, the most obvious tell that Plaintiffs' motion lacked merit was that it included *no legal analysis* but simply invited the Court to review its experts' reports.  Docket Nos. 66 at 25; 108-09 (Defs.' opposition and cross motion).

4.  The Warner Defendants warned Plaintiffs' Counsel from the outset of this case that, if Defendants prevailed, they would seek their reasonable fees and costs from Plaintiffs' Counsel pursuant to Rule 11, and from Plaintiffs under the Copyright Act.  *E.g.*, Ex. 3 at 16-17.  The Warner Defendants have sought to mitigate and reduce their fees and costs at every turn, but Plaintiffs' Counsel and Plaintiffs have recklessly pressed ahead, *e.g.*, scheduling needless depositions, conducting wasteful and duplicative "forensic" examinations, piling on needless filings, and demanding "proof" from Defendants the law does not remotely require.  *E.g.,* Pearson Decl. Exs. 13, 14 at 241, 15, 17, 21 at 266-67, 26-27.

Defendants will move separately under the Copyright Act to obtain their fees and costs from Plaintiffs.[2]  In this Rule 11 motion, the Warner Defendants seek an order holding Plaintiffs' Counsel jointly and severally liable for any fees and costs awarded the Warner Defendants against Plaintiffs.[3]  In their motion for fees and costs against Plaintiffs, the Warner Defendants will submit the detailed joint statement required by the Court's Standing Order, setting forth their exact legal expenses incurred, and, in advance of that filing, they will provide Plaintiffs' Counsel and Plaintiffs with all of the evidence of their reasonable fees and costs as is required by the Court's rules.  *See* Docket No. 6 at 12-15.

This motion for sanctions is based on this Notice of Motion and accompanying Memorandum of Points and Authorities; the concurrently filed Declaration of Ashley Pearson; the concurrently filed Proposed Order; all other

---

[2] *See, e.g.*, 17 U.S.C. § 505; *Balsley v. LFP, Inc.,* 691 F.3d 747, 773 (6th Cir. 2012) ("The grant of fees and costs [under § 505] 'is the rule rather than the exception and they should be awarded routinely.'"); *Berry v. Deutsche Bank Trust Co. Ams.*, 632 F. Supp. 2d 300, 302 (S.D.N.Y. 2009); *Tillman v. New Line Cinema Corp.*, 2008 WL 5427744, at *4-5 (N.D. Ill. Dec. 31, 2008).

[3] *See, e.g.*, FED. R. CIV. P. 11(c)(1); *Religious Tech. Ctr. v. Gerbode*, 1994 WL 228607, at *4-5 (C.D. Cal. May 2, 1994) (awarding sanctions jointly and severally against attorney and law firm).

WARNER DEFS.' RULE 11 MOT.

briefing in this case; and such additional submissions and argument, including any reply briefing, as may be presented at or before the hearing on this motion.

Dated:  April 29, 2014                    Respectfully submitted,

O'MELVENY & MYERS LLP

By:  /s/ Matthew T. Kline
        Matthew T. Kline
Lead Counsel for Warner Defendants

WARNER DEFS.' RULE 11 MOT.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    LEGAL BACKGROUND .................................................................... 2

III.   RULE 11 SANCTIONS ARE WARRANTED. ............................... 4

      A.     Assertion of Baseless Claims and an Abject Failure to Investigate. .................................................................................... 4

      B.     Refusal to Stand Down and Reckless Allegations of Fraud. ................ 7

      C.     Forcing Additional Needless Motion Practice and Further Work.................................................................................... 11

V.     CONCLUSION ................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aagard v. Palomar Builders, Inc.,*
344 F. Supp. 2d 1211 (E.D. Cal. 2004) .................................................. 6

*Adriana Int'l Corp. v. Lewis & Co.,*
913 F.2d 1406 (9th Cir. 1990) .......................................................... 3, 4

*Arclightz & Films Pvt., Ltd. v. Video Palace, Inc.,*
2003 WL 22434153 (S.D.N.Y. Oct. 24, 2003) ............................... 3, 12

*Balsley v. LFP, Inc.,*
691 F.3d 747 (6th Cir. 2012) ............................................................... 3

*Berry v. Deutsche Bank Trust Co. Ams.,*
632 F. Supp. 2d 300 (S.D.N.Y. 2009) ................................................. 3

*Burger-Moss v. Steinman,*
127 F.R.D. 452 (S.D.N.Y. 1989) .................................................... 4, 10

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters.,*
498 U.S. 533 (1991) ........................................................................... 2

*Calloway & LeFlore v. Marvel Entm't Grp., Div. of Cadence Indus. Corp.,*
854 F.2d 1452 (2d Cir. 1988),
*rev'd on other grounds,* 493 U.S. 120 (1989)............................. 4, 5, 11

*Christian v. Mattel,*
286 F.3d 1118 (9th Cir. 2002) ............................................................ 5

*Dielsi v. Falk,*
916 F. Supp. 985 (C.D. Cal. 1996) ...................................................... 6

*Hays v. Sony Corp. of Am.,*
847 F.2d 412 (7th Cir. 1988) ........................................................... 4, 5

*Katzman v. Victoria's Secret Catalogue,*
167 F.R.D. 649 (S.D.N.Y. 1996),
*aff'd* 113 F.3d 1229 (2d Cir. 1997) ..................................................... 3

*Kodadek v. MTV Networks, Inc.,*
152 F.3d 1209 (9th Cir. 1998) ............................................................ 6

*Tillman v. New Line Cinema Corp.,*
2008 WL 5427744 (N.D. Ill. Dec. 31, 2008) ...................................... 3

*Religious Tech. Ctr. v. Gerbode*,
      2008 WL 5427744 (N.D. Ill. Dec. 31, 2008) ....................................................... 3

*Smith & Green Corp. v. Tr. of the Const. Inds. & Laborers Health &*
      *Welfare Trust*,
      244 F. Supp. 2d 1098 (D. Nev. 2003) .................................................... 3, 6

*Stewart v. Wachowski*,
      2005 WL 6184235 (C.D. Cal. June 14, 2005)....................................................... 6

*Zuk v. E. Penn. Psychiatric Inst. of the Med. College of Penn.*,
      103 F.3d 294 (3d Cir. 1996) .......................................................... 3, 5

**STATUTES**

17 U.S.C. § 301(a) ....................................................................................... 6

**OTHER AUTHORITIES**

A. KOZINSKI, LAW AND POPULAR CULTURE: HOW I NARROWLY
      ESCAPED INSANITY, 48 UCLA L. REV. 1293 (2001) .............................................. 5

**RULES**

FED. R. CIV. P. 11 ................................................................................*passim*

WARNER DEFS.' RULE 11 MOT.

## I.   INTRODUCTION

Rule 11 sanctions are appropriate against Plaintiffs' Counsel because this case—accusing Defendants of copying the movie *TWTC* from *Omaha*—should never have been filed.  The two works are not remotely similar under the well-established copyright case law, and had Plaintiffs ever asked the Warner Defendants whether defendant Randy Brown copied *TWTC* from *Omaha*, they would have provided Plaintiffs with extensive evidence that Brown worked on, completed, and sold *TWTC* to a third-party production company, The Bubble Factory, some *seven years before* Plaintiffs even conceived of *Omaha* in 2004.

Once the case was filed, it should have been dismissed as soon as the Warner Defendants sent Plaintiffs a dated 1998 draft of the *TWTC* script, and showed how that 1998 script contained every story element that Plaintiffs alleged defendants stole from *Omaha*.

And if there were any doubt—*any*—this case should have been dismissed by any reasonable lawyer when the Warner Defendants provided Plaintiffs with a stack of sworn declarations from third-party witnesses, with no financial interest in this case, attesting to how Brown developed, wrote, sold, revised, and marketed *TWTC* in the 1990s.  These declarations were accompanied by dated hard copy and electronic evidence from various sources showing that *TWTC* was complete in the late 1990s and contained all of the story elements that Plaintiffs say were copied.

But Plaintiffs' Counsel has been anything but reasonable.  They began by filing a 120-page complaint—which they then promoted—accusing Randy Brown (a humble father of two who worked much of his adult life to get *TWTC* produced) of being a *criminal*, an *impostor*, a *quitter*, and a *liar*.  The press repeated these allegations, harming Mr. Brown personally, as Plaintiffs' lead counsel knows well can occur, as noted on the litigation strategy blog he authors.  *See, e.g.*, Pearson Decl. ¶ 3 & Ex. 1 at 7.  In the complaint, Plaintiffs' Counsel also accused Warner Bros., its affiliates, respected directors and producers, and several unaffiliated talent

WARNER DEFS.' RULE 11 MOT.

1    agencies, agents, and writers of a massive *criminal* copyright conspiracy to steal

2    *Omaha* to make *TWTC*.  Again, Plaintiffs' Counsel made these wild claims without

3    ever first contacting Defendants.

4         When the Warner Defendants contacted Plaintiffs' Counsel and provided

5    declarations from third-party, *percipient* witnesses—including a film professor who

6    worked with Brown on *TWTC* in the 1990s, a well-respected literary attorney who

7    negotiated his option agreement selling *TWTC* in 1998, and entertainment

8    executives who bought, marketed, and reviewed *TWTC,* starting in 1997—

9    Plaintiffs' Counsel told the press and this Court that these witnesses were *liars*

10   engaged in *fraud*.  Plaintiffs' Counsel has also pursued this case heedlessly—

11   forcing defendants to move for summary judgment, to fend off needless discovery,

12   and to oppose Plaintiffs' manifestly frivolous motion for summary judgment.

13   Plaintiffs' Counsel has done so for one reason:  By their own account, Plaintiffs

14   come from means, and Plaintiffs' Counsel is billing this case by the hour.

15        Plaintiffs' Counsel knows this case is frivolous.  The two depositions they

16   have taken confirm this, as does every scrap of evidence in the case, and as does

17   clear Ninth Circuit law.  Plaintiffs' Counsel defend their actions, however, and seek

18   to avoid sanctions by saying the experts they hired provide them air cover.  But as

19   shown in great detail in the Warner Defendants' opposition to Plaintiffs' motion for

20   summary judgment and related filings, the experts' reports are objectively baseless

21   under established copyright law, and worse still, the reports ignore the extensive

22   evidence of prior creation that the Warner Defendants have provided Plaintiffs.

23        Rule 11 sanctions should rarely be invoked.  But as courts have recognized in

24   similar copyright and RICO cases, they are fully appropriate and warranted in cases

25   like this one—which needlessly harass defendants and waste the Court's resources.

26   ## II.   LEGAL BACKGROUND

27        Rule 11 is "aimed at curbing abuses of the judicial system." *Bus. Guides, Inc.*

28   *v. Chromatic Commnc's Enters.*, 498 U.S. 533, 542 (1991).  It imposes a "duty" on

attorneys to conduct "prefiling inquiry into both the facts and law." FED. R. CIV. P. 11(b)(2) & Comment to 1983 Amendment.  Rule 11 also mandates that counsel not "multiply the proceedings … if at any point it becomes apparent [they] will not be able to prove any element essential to [their] claims." *Arclightz & Films Pvt., Ltd. v. Video Palace, Inc.*, 2003 WL 22434153, at *7 (S.D.N.Y. Oct. 24, 2003).

Rule 11 mandates sanctions where an attorney pursues factually or legally frivolous claims, or presents filings to the Court for "any improper purpose, such as to harass … or needlessly increase the cost of litigation." FED. R. CIV. P. 11(b)(1)-(3), (c) & Comment to 1983 Amendment.  A claim is "frivolous" under Rule 11 if "no competent attorney would believe it was well-grounded in fact and warranted by law." *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1415 (9th Cir. 1990).

Rule 11 sanctions are fairly often awarded in copyright and RICO cases, given how clear copyright case law is on certain subjects and given the harm RICO claims can cause defendants. *See, e.g.*, *Zuk v. E. Penn. Psychiatric Inst. of the Med. College of Penn.*, 103 F.3d 294, 300 (3d Cir. 1996) (Rule 11 sanctions against attorney whose "weak grasp of copyright law … caused him to pursue a course of conduct which was not warranted by existing law and compelled the defendant to expend time and money in needless litigation"); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996) *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (sanctions are especially appropriate for bringing frivolous RICO claims, given the "stigmatizing effect" on defendants).  Sanctions are also appropriate where, as here, Plaintiffs pursue state-law claims that are clearly preempted by federal copyright law. *See, e.g.*, *Smith & Green Corp. v. Tr. of the Const. Inds. & Laborers Health & Welfare Trust*, 244 F. Supp. 2d 1098, 1108 (D. Nev. 2003).

Sanctions are most justified here, however, given Plaintiffs' Counsel's failure ever to contact the Warner Defendants before suing them, and given the way that Plaintiffs' Counsel recklessly pressed ahead in this case, accused defendants, witnesses, and counsel of "fraud," and caused defendants to spend needless time

- 3 -

WARNER DEFS.' RULE 11 MOT.

1   and money defending an objectively baseless case.  *See, e.g.*, *Hays v. Sony Corp. of*

2   *Am.*, 847 F.2d 412, 418 (7th Cir. 1988) (Rule 11 sanctions against plaintiff's

3   attorney who "did not so much as write Sony (before suing it)"); *Calloway &*

4   *LeFlore v. Marvel Entm't Grp., Div. of Cadence Indus. Corp.*, 854 F.2d 1452,

5   1455, 1472, 1483 (2d Cir. 1988), *rev'd on other grounds*, 493 U.S. 120 (U.S. 1989)

6   (sanctioning plaintiffs' counsel in copyright case who recklessly asserted that

7   defendant "forged" a key document); *Burger-Moss v. Steinman*, 127 F.R.D. 452,

8   453-54 (S.D.N.Y. 1989) (sanctioning plaintiff's counsel who needlessly forced

9   defendant to move for judgment on what was a baseless claim).

10      Plaintiffs' Counsel have violated all of these rules, repeatedly.

11  **III.   RULE 11 SANCTIONS ARE WARRANTED**

12      **A.   Assertion of Baseless Claims and an Abject Failure to Investigate.**

13      *1. Similarity.*  As discussed in detail in the Warner Defendants' summary

14  judgment opposition and cross-motion for summary judgment on "similarity"

15  grounds, Docket Nos. 108-09, *TWTC* and *Omaha* are not remotely "similar" movies

16  under this Court's well-established copyright jurisprudence.  They have different

17  plots, characters, settings, and dialogue, and only share the most high-level story

18  concepts—which are unprotectable under copyright law.  *Id.*  Indeed, Plaintiffs

19  cannot point to a *single* case under the Court's case law finding two movies that are

20  so dissimilar to be copies of one another.  Docket Nos. 108 at 7-11.  To the

21  contrary, the Ninth Circuit has consistently rejected copyright claims in cases

22  involving far more similarities—including movie titles, scenes, plot lines, and even

23  ahistorical story premises—*none* of which *TWTC* and *Omaha* share.  *Id.* at 11-13.

24  While Plaintiffs' Counsel got three supposed "experts" to say the films are

25  "similar," such conclusory testimony untethered to the law is regularly rejected by

26  courts in copyright cases as unhelpful and improper.  *Id.* at 13-16; Docket No. 110.

27  In short, no "competent attorney would believe" that a claim that *TWTC* was legally

28  similar to *Omaha* was "warranted by law."  *Adriana*, 913 F.2d at 1415.  Plaintiffs'

WARNER DEFS.' RULE 11 MOT.

Counsel purport to be entertainment law experts, but even lawyers with a "weak grasp of copyright law" would be properly sanctioned under Rule 11 for filing this case. *Zuk*, 103 F.3d at 300.

    *2. Prior Creation.*  Plaintiffs' Counsel also never bothered to contact Brown or any of the Warner Defendants before accusing them of abject *crimes* in their 120-plus-page complaint.  *Cf. Hays*, 847 F.2d at 418 (sanctioning counsel, in part, for failing to perform such basic diligence).  Had Plaintiffs' Counsel done so, the Warner Defendants would have provided them with the extensive evidence showing that Brown created, completed, and sold *TWTC* to the Bubble Factory in 1997—when Plaintiff Ryan Brooks was still in high school, and seven years before Brooks would allegedly conceive of *Omaha*.  Docket No. 28 ¶¶ 46, 62.

    This evidence of Brown's work on *TWTC* in the 1990s is detailed in the Warner Defendants' summary judgment filings, Docket Nos. 98; 108 at 16-18; 109—and such proof of prior creation clearly bars Plaintiffs' claims.  *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002) ("[a]s a matter of simple logic, it is impossible to *copy* something that does not exist"); Docket No. 98 at 7-9.  Again, any competent lawyer who reviewed this evidence would advise his client to move on with his life and *not* file or pursue such a baseless case.  *Cf.* A. Kozinski, *Law And Popular Culture: How I Narrowly Escaped Insanity*, 48 UCLA L. Rev. 1293, 1301-02 (2001).[4]

    *3. Frivolous State-Law and RICO Claims.*  Even if there were a copyright claim to assert here (and there is not), no competent lawyer would have asserted the

---

    [4] Indeed, even before filing this lawsuit, Plaintiffs' Counsel had evidence that *TWTC* was written prior to *Omaha*.  Plaintiffs concede in their complaint that on September 6, 2012, one of Brooks' friends gave him "an allegedly 'older version' of the *Trouble with the Curve* script."  Docket No. 28 ¶ 11.  Plaintiffs' complaint asserts the script was "manufactured," "counterfeit," and "faked," *id.* ¶¶ 11, 27, 107, but gives no explanation why Plaintiffs or their Counsel never asked the Warner Defendants whether this were true, as the law counsels they plainly should have done.  *See Hays*, 847 F.2d at 418; *Calloway*, 854 F.2d at 1455, 1472, 1483.

        WARNER DEFS.' RULE 11 MOT.

1   claims Plaintiffs pursue under RICO and California state law.  As examples, the

2   RICO claim is predicated on nothing more than copyright infringement, and not the

3   sort of criminal, "Canal Street" piracy scheme on which a RICO claim could

4   conceivably be based.  *See Stewart v. Wachowski*, 2005 WL 6184235, at *5 (C.D.

5   Cal. June 14, 2005) (RICO claim based on basic copyright infringement barred).

6       Equally frivolous are Plaintiffs' state-law claims.  Each pivots on a claim that

7   *TWTC* infringes *Omaha*.[5]  In enacting the 1976 Copyright Act, Congress expressly

8   preempted such state law claims.  17 U.S.C. § 301(a) ("On and after January 1,

9   1978, all legal or equitable rights that are equivalent to any of the exclusive rights

10  within the general scope of copyright … are governed exclusively by this title.").

11  For decades, courts in this Circuit have repeatedly recognized the supremacy of

12  federal law in this area, holding that unfair competition, conversion, and tortious

13  interference claims based on copying claims are all preempted.[6]  Filing such plainly

14  preempted claims is sanctionable.  *See Smith & Green*, 244 F. Supp. 2d at 1108.

15      Based on any of the three separate bases enumerated above, the Court is fully

16  empowered to sanction Plaintiffs' Counsel for the complaint they filed on October

17  1, 2013.  Their conduct since then only cements the appropriateness of this result.

18

19

---

20      [5] *See* Docket No. 28 ¶¶ 252 (Claim 5; tortious interference; "Defendants/Co-
    Conspirators executed a plan to <u>infringe upon</u> Plaintiff Gold Glove Productions'

21  unique, <u>copyrighted</u> father-daughter baseball story"); 259 (Claim 7; conversion;
    "[e]ach Defendant, as part of the conspiracy alleged herein, wrongfully converted

22  and disposed of Gold Glove Productions' rights by <u>misappropriating the screenplay</u>
    *Omaha*"); 279 (Claim 9; CAL. BUS. & PROF. CODE § 17200; "Defendants'/Co-

23  Conspirators' conduct was fraudulent in that it attempted to deceive reasonable
    consumers by <u>stealing the potential award-winning story</u> of *Omaha* and …

24  camouflaging it as the resulting <u>infringing work</u>, [*TWTC*]") (underlining added).

25      [6] *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998)
    (Copyright Act preempts copying claims asserted under § 17200); *Aagard v.*

26  *Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (same;
    intentional interference with prospective economic advantage); *Dielsi v. Falk*, 916

27  F. Supp. 985, 992 (C.D. Cal. 1996) (same; conversion; state-law claim premised on

28  "allegation that Defendants have wrongfully used" Plaintiff's script by copying it).

- 6 -                              WARNER DEFS.' RULE 11 MOT.

**B.    Refusal to Stand Down and Reckless Allegations of Fraud.**

*1.  Defendants' Efforts to Reason with Plaintiffs' Counsel.*  Days after being served with Plaintiffs' complaint and retaining counsel, the Warner Defendants wrote to Plaintiffs' Counsel on October 10, 2013.  Pearson Decl. Ex. 3.  In a 10-page letter, accompanied by exhibits, the Warner Defendants detailed the many reasons this case was without merit.  *See id.*  They showed how *TWTC* and *Omaha* were not legally similar; how Plaintiffs' state-law claims were preempted and their RICO claims were baseless; and, most importantly, how Brown had written *TWTC* in the 1990s, sold it to The Bubble Factory, and how a 1998 version of the *TWTC* script contained all of the story elements Plaintiffs claimed were stolen.  *Id.* at 9-18.  Defendants enclosed a 1998 copy of the *TWTC* script that Brown's former lawyer kept in her law firm's files.  *Id.* at 20-139.  Defendants furnished a dated, executed copy of The Bubble Factory's 1997 option agreement to buy *TWTC* from Brown, as well as follow-on contracts and a copy of a check for the option rights.  *Id*. at 141-210.  And the Warner Defendants provided a detailed chart sourcing each element in the 2012 movie *TWTC* that Plaintiffs alleged was copied from *Omaha* to its specific and *actual* origin Brown's 1998 *TWTC* script.  *Id.* at 11-14.

Plaintiffs' Counsel did not pause to review the evidence, and rather directed the Warner Defendants not to "waste any more time," saying their letter was "unfounded on many levels."  *Id.* Exs. 4-5.  Surprised, the Warner Defendants urged Plaintiffs' Counsel to dismiss the case, *without* prejudice to refile it, so as to take time to review the abundant evidence available of *TWTC*'s independent and prior creation.  *Id.* Ex. 6 at 214-115.  Again, Plaintiffs' Counsel refused.  *Id.* at 214.

In light of these unconsidered responses, the Warner Defendants went to the expense of obtaining seven floppy disks from Brown that contained electronic copies of several drafts of his *TWTC* script.  The Warner Defendants had the files analyzed by a leading computer forensic expert (Scott Cooper) because the disks could not be opened on standard, current-day computers, and because Plaintiffs'

WARNER DEFS.' RULE 11 MOT.

Counsel wildly accused the Warner Defendants of "manufacturing" evidence. *Id.* Cooper accessed 10 scripts on the disks, found they were created or last saved between 1997 and 2003—all before *Omaha* was written—and opined that the electronic evidence was both accurate and conclusive.  Docket Nos. 104 ¶ 8; 104-1 at 3-4.  The Warner Defendants notified Plaintiffs' Counsel of these findings and urged them again to "dismiss this ill-founded lawsuit." *Id.* at 213.

Rather than request access to the disks, Plaintiffs' Counsel responded *eight minutes* later, calling the evidence a "fraud," accusing Cooper of bias, and stating: "We have a very strong case and are looking forward to trying it." *Id.*

Plaintiffs' Counsel wrote again a day later, purporting to respond to the Warner Defendants' challenges to the legal and factual underpinnings of Plaintiffs' case. *Id.* Ex. 7.  The letter cited no case law, included no evidence, and rather was a speech about the litigation acumen of Plaintiffs' Counsel, their clients' resources, and the Warner Defendants' dishonesty.  Plaintiffs' Counsel touted their extensive experience suing movie studios. *Id.* at 219.  They stated they were working on the case for an hourly fee.  And they bragged their client "comes from a well known and highly respected family from Houston." *Id.* at 217-18.  They proclaimed that Brown "did not write the [*TWTC*] script given to [Plaintiffs on October 10], and certainly not at the time suggested." *Id.* at 218.  And they touted experts and investigators—none identified—who vouched for their claims. *Id.* at 218-19

Plaintiffs' Counsel refused to drop any claims, *id.* at 219, and days later, amended their complaint to remove pictures of Plaintiffs and a large quote from *The Great Gatsby*.  They left their legal claims intact along with irrelevant personal attacks, like calling Brown an "imposter."  Docket No. 28 ¶ 140.  The press has reported and noted these personal "insults" directed at Brown.  Pearson Decl. ¶ 3.

Over the next few weeks, and in a final effort to avoid costly motion practice, the Warner Defendants gathered sworn declarations and more evidence showing that *TWTC* was created in the 1990s.  On November 8, the Warner Defendants sent

- 8 -

the evidence, totaling over 2,700 pages, to Plaintiffs' Counsel.  Pearson Decl. Ex. 9.
It included, *e.g.*:

- Sworn declarations from Brown and four disinterested eye-witnesses who worked with Brown in the 1990s to draft, revise, sell, and promote *TWTC*. Docket Nos. 99-103.
- Multiple, dated, fully authenticated drafts of the script—which came from The Bubble Factory's files, Brown's files, and his former lawyer's files. Docket No. 101-1 at 15-123, 130-241, 250-369; 103-1 at 70-189.
- A "Coverage Report" analyzing a September 1997 draft of *TWTC*, dated September 14, 1997, and bearing a fax legend showing it was faxed that very same day.  Docket No. 101-1 at 124-29.
- Numerous submission letters from 1997 to 2001 sending the *TWTC* script to studios, managers, and agents.  *Id.* at 374-381.
- And Cooper's expert report and findings.  Docket Nos. 104; 104-1.

Citing the applicable case law, the Warner Defendants explained that this evidence of prior creation was more than sufficient to warrant summary judgment. Pearson Decl. Ex. 9.  And as the Warner Defendants had done from the outset of the case, they warned that, if Plaintiffs pressed ahead with this case, the Warner Defendants would seek their fees and costs against Plaintiffs and Plaintiffs' Counsel, including in this Rule 11 motion.  *Id.* at 227; *see* Exs. 3 at 16-17; 6 at 213.

Plaintiffs' Counsel's response:  "Your cleints' [sic] defense is contrived."  *Id.* Ex. 11 at 230.  The Warner Defendants and their co-defendants pressed to meet with Plaintiffs' Counsel on these issues and all of the defendants' initial motions, but Plaintiffs' Counsel delayed and cancelled meetings, *id.* Ex. 11 at 230-31, then refused to meet at all, *id.* Ex. 12 at 232-33, 14 at 238, and called the Warner Defendants' evidence a "fraud," "false," "manufactured," "fabricated," and "forged."  *Id.* at 238-40; *id.* Exs. 11 at 230, 12 at 233-34, 18 at 251-52.

WARNER DEFS.' RULE 11 MOT.

1    Plaintiffs' Counsel even went so far as to claim that the Warner Defendants'

2  witnesses had perjured themselves and provided "false" documents. *Id.* Ex. 14 at

3  240. Two of these witnesses (Neil Landau and Gerard Boccaccio) are respected

4  film professors at UCLA and NYU—one of whom (Landau) wrote a published

5  article well *before* Plaintiffs filed their case discussing the work he did with Brown

6  in the 1990s on the *TWTC* script. Docket No. 100-1 at 235-38. Two of the other

7  witnesses (Bill Sheinberg and Marcy Morris) are active members of the California

8  State Bar. Docket No. 103 ¶ 2. All of these third-party witnesses attested to having

9  no personal or financial interest in *TWTC*. Yet, Plaintiffs' Counsel blithely called

10  them liars, biased, and frauds.

11    Plaintiffs' Counsel's intransigence compelled the Warner Defendants to

12  move for summary judgment, which they did on December 4, 2013. Docket No.

13  98. In correspondence, Plaintiffs' Counsel called the Warner Defendants' summary

14  judgment filings "infected and baseless"—although they still provided no contrary

15  legal authority—and again accused the Warner Defendants of submitting

16  "fabricated evidence" to the Court. Pearson Decl. Ex. 28 at 289.

17    *2.  The Propriety of Sanctions.*  The failure to consider contrary evidence and

18  insistence on pursuing a claim with no factual basis is sanctionable. *See supra* at 2-

19  4. As an example, in *Burger-Moss*, the court awarded sanctions against plaintiff's

20  counsel in a copyright infringement case. Counsel put defendants to the "expense

21  of preparing [a] motion for summary judgment" when he "recognized that plaintiffs

22  were unable to prove access, an essential element of their claim." 127 F.R.D. at

23  453-54. Here, too, the Warner Defendants were forced to bear the unwarranted

24  expenses of moving for summary judgment, hiring forensic experts, and having to

25  secure numerous third-party declarations—all when there was clear documentary

26  evidence, from numerous sources, that *TWTC* was created years before *Omaha*.

27    The outrageous "fraud" allegations that Plaintiffs' Counsel glibly toss about

28  are independent bases for awarding sanctions. The claims have been made in

WARNER DEFS.' RULE 11 MOT.

conferences with counsel, statements Plaintiffs' Counsel gave to the media, and various court pleadings.  *Supra* at 7-9 & n.4; Docket No. 66 at 5, 7, 23, 25.  In *Calloway*, a similar movie-script infringement case, plaintiff claimed defendant was not authorized to make use of his script, and in response, defendant produced a signed option agreement permitting the use.  Plaintiff's counsel then added a claim that defendant had "forged" the signature on the option agreement.  854 F.2d at 1455.  After defendant defeated this forgery claim, the district court sanctioned plaintiff's counsel for "his indifference to the existence of a factual basis" for the forgery allegation, and the Second Circuit affirmed this award.  *Id.* at 1472, 1483.

The conduct of Plaintiffs' Counsel here has been far, far worse.

### C.    Forcing Additional Needless Motion Practice and Further Work.

1.  In an effort to stave off judgment on the Warner Defendants' affirmative motion for summary judgment, Plaintiffs threatened to file a motion for summary judgment of their own based on the expert reports they *never* disclosed.  Pearson Decl. Ex. 14.  The Warner Defendants asked Plaintiffs' Counsel to produce the reports or to cite to *any* case granting Plaintiff judgment in such a case—where the issue of prior creation was so obviously disputed by defendants.  *Id.* Ex. 16.  Plaintiffs' Counsel refused to do either.  *Id.* Ex. 18 at 251-52.

Instead, they moved for summary judgment on the ground that *TWTC* and *Omaha* were strikingly similar works.  Docket No. 66.  The motion, as shown in the Warner Defendants' opposition to it, Docket No. 108, is frivolous—not to mention a massive waste of the Court's and the parties' time.  To begin, it improperly rests, by Plaintiffs' own count on 98 alleged material facts.  Docket No. 106-1.  It barely mentions the law (and then misstates it), and completely elides the threshold prior-creation issue that bars their claims.  Docket No. 66 at 23-25.  And, most fundamentally, it defies this Court's well-established jurisprudence on what sorts of "similarities" are legally cognizable.  Docket No. 108 at 11-13.  Instead, it rests

1    exclusively on a six-inch stack of expert reports—but of the sort courts repeatedly

2    exclude in copyright cases.  *Id.* at 16-24; Docket No. 110.

3          Burdening the Court and the Warner Defendants with this affirmative

4    summary judgment motion is the quintessence of needlessly "multiply[ing] the

5    proceedings," *Arclightz*, 2003 WL 22434153, at *7, and "increas[ing] the cost of

6    litigation."  FED. R. CIV. P. 11(b)(1)-(3), (c).  These wasteful filings are another

7    independent basis justifying the imposition of sanctions on Plaintiffs' Counsel.

8          2.  So, too, is Plaintiffs' Counsel's continued refusal to accept the reality of

9    still further evidence emerging in discovery.  As just three examples:

10   •    In his deposition, non-Warner Defendant Jay Cohen confirmed that he

11        read *TWTC* in 1998; tried to produce it for Punch Productions and Cosmic

12        Entertainment in the late 1990s and early 2000s; and the description of the

13        script in the 1997 "Coverage Report" matched the *TWTC* script he read in

14        the 1990s.  Docket No. 112-5 at 257:21-24, 258:6-17, 260:5-262:15.

15        Plaintiffs' Counsel refuses to dismiss Cohen or any defendant from the

16        case, and instead challenged the authenticity of the 1997 Coverage

17        Report.  *Id.* at 261:2-5.

18   •    To address this supposed challenge, the Warner Defendants obtained a

19        sworn declaration from the author of the 1997 Coverage Report, a former

20        freelance coverage writer named Carrie Gadsby.  *Id.* Ex. 20.  Plaintiffs'

21        Counsel has ignored this evidence as well.  *Id.* Exs. 21 at 267, 20.

22   •    The Warner Defendants also obtained other *TWTC* documents from the

23        1990s—including a hard-copy *TWTC* script dated "3/98"; two notebooks

24        of hand-written notes (some dated) concerning Brown's work on *TWTC*;

25        and an "11/14/97" fax with extensive notes the on *TWTC* script from

26        Brown's former manager.  Plaintiffs' Counsel again claimed fraud:

27        "Funny how AFTER our experts noted there were no notes, a set appears,

28        again, weeks later."  *Id.* Ex. 21 at 266.  Even at the time of drafting this

WARNER DEFS.' RULE 11 MOT.

motion, Plaintiffs continue to claim that the Warner Defendants' evidence of prior creation is "fabricated," and insist on more, duplicative, costly, and baseless forensic tests of plainly authentic evidence—evidence verified by percipient testimony, third-party law firm files, third-party production company files, and all other sorts of confirming evidence. *Id.* Ex. 24, 26 28; Docket Nos. 99-104.

The desire of Plaintiffs' Counsel to bill this case to the end shows no sign of abating. They have taken harassing depositions of defendants, like that of Randy Brown, at which they spent considerable, needless time asking about his music career and having him list his favorite baseball players. *E.g.*, *id.* Ex. 25 at 275-77. Worse still—and ignoring both the dictates of copyright law and freedoms of fictional, creative choice—they spent much of the deposition debating Brown about the story logic of creative *fictional* choices like:

- having a character drive a vintage car when parts of the movie required him to drive through the hills of North Carolina, *id.* at 283-84;
- having a character drink coffee when he had glaucoma, *id.* at 285;
- having a lawyer character interview for a law-firm job in the spring, when the hiring of big-firm associates is normally done in the fall, *id.* at 279-80;
- and having a scout character in the movie cuss and use the Lord's name in vain, when one scouts who Brown interviewed for a few minutes on a technical baseball question is allegedly devoutly religious, *id.* at 281-82.

Plaintiffs' Counsel threatened to depose Brown again (beyond the limits set by the Federal Rules) and to take more depositions of parties and witnesses with no connection to *TWTC*'s original creation, including Michele Weisler, who Plaintiffs acknowledge had no involvement in *TWTC* until 2011. *Id.* Ex. 28 at 289. When the Warner Defendants' counsel questioned the need to depose Weisler at this stage in the litigation—when Plaintiffs' Counsel could point to *no acts* of actionable copying to which she was possibly privy—Plaintiffs' Counsel accused the Warner

WARNER DEFS.' RULE 11 MOT.

1   Defendants' counsel of "calling the day night" and threatened, "[s]ooner or later,

2   you'll see it's not."  *Id.*

3        Plaintiffs' Counsel have also demanded further, costly, pointless, and

4   duplicative forensic examinations, including *eight* days of ink-dating testing by two

5   separate experts—and only on a fraction of the many sources of evidence showing

6   the independent and prior creation of *TWTC*.  *Id.* Exs. 24, 26, 28.

7        They also they threaten to file new claims, *id.* Exs. 14 at 241, 28 at 29, and

8   have undertaken still further, recent efforts to publicize this lawsuit, *e.g.*, Pearson

9   Decl. ¶ 3, as well as and the damaging, false allegations it contains (particularly

10  about Mr. Brown) on Plaintiffs' Counsel's website.  *See*, *e.g., id*. Exs. 2, 8, 19.

11  Indeed, the vitriolic insults that Plaintiffs' Counsel have directed at Brown have

12  been reported by the press as notably unusual.  *See*, *e.g.*, Pearson Decl. ¶ 3.

13       This lawsuit—and these tactics—can and should be brought to an end.  And

14  Plaintiffs' Counsel (and others who may wish to follow in their footsteps) should be

15  sent a clear message:  Wasteful litigation of this sort is neither sport, nor is it a

16  costless exercise.  Nor are endless missives accusing respected defendants, third

17  parties, and counsel of crimes and fraud—and commanding them to do things like

18  "read English," *id*. Exs. 28 at 289; Docket Nos. 28 ¶¶ 156-93, 265-70; 66 at 5-7, 12.

19  **IV.   CONCLUSION**

20       The Warner Defendants' Rule 11 motion should be granted, and Plaintiffs'

21  Counsel should be sanctioned.  Plaintiffs' Counsel, along with Plaintiffs, should be

22  held jointly and severally liable for the Warner Defendants' reasonable fees and

23  costs defending this case.

24  Dated:  April 29, 2014                    Respectfully submitted,
                                              O'MELVENY & MYERS LLP
25

26                                            By:   /s/ Matthew T. Kline

27                                                  Matthew T. Kline
                                              Lead Counsel for Warner Defendants
28  OMM_US:72019317.

- 14 -                                        WARNER DEFS.' RULE 11 MOT.